No. 25-6874

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

CALIFORNIA CHAMBER OF COMMERCE, *et al*.,
*Plaintiffs-Appellees*,

v.

ROB BONTA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE
CALIFORNIA, *et al*.,
*Defendants-Appellants*.

**On Appeal from the United States District Court
for the Eastern District of California**
No. 2:24-cv-03798-DJC-SCR
The Honorable Daniel J. Calabretta

**DEFENDANTS' OPENING BRIEF ON THE MERITS**

ROB BONTA
  *Attorney General of California*
THOMAS S. PATTERSON
  *Senior Assistant Attorney General*
ANYA M. BINSACCA
  *Supervising Deputy Attorney General*
KRISTIN A. LISKA
  *Deputy Attorney General*
STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
Telephone: (415) 510-3916
Fax: (415) 703-5480
Kristin.Liska@doj.ca.gov
*Attorneys for Defendants*

December 19, 2025

# TABLE OF CONTENTS

**Page**

Introduction .................................................................................................... 1

Statement of Jurisdiction ................................................................................ 4

Statement of Issues ........................................................................................ 4

Statement Regarding Addendum .................................................................... 4

Statement of the Case .................................................................................... 4

    A.    Senate Bill 399 (SB 399) ................................................................... 4

    B.    Procedural History ............................................................................. 8

Standard of Review ...................................................................................... 10

Summary of Argument ................................................................................. 11

Argument ...................................................................................................... 13

I.    Plaintiffs Have Not Established Standing ............................................. 13

II.   Plaintiffs Have Not Established a Likelihood of Success on the Merits of Their Challenge to SB 399 ............................................................... 18

    A.    SB 399 Is Not Unconstitutional Under the First Amendment .......... 18

        1.    The First Amendment Does Not Include the Right to Compel an Audience to Listen ................................................. 19

        2.    SB 399 Is Not Subject to First Amendment Scrutiny Because It Only Protects Employees from Being Compelled to Listen ................................................................ 21

        3.    Even if SB 399 Does Regulate Speech, It Is Permissible as Protection of an Unwilling Audience ................................. 26

    B.    SB 399 Is Not Facially Preempted by the National Labor Relations Act ................................................................................... 30

Conclusion ................................................................................................... 35

Statement of Related Cases .......................................................................... 36

Certificate of Compliance ............................................................................ 37

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Am. Apparel & Footwear Ass'n, Inc. v. Baden*
107 F.4th 934 (9th Cir. 2024) ...............................................................30, 31, 32

*Am. Encore v. Fontes*
152 F.4th 1097 (9th Cir. 2025) .............................................................16, 17, 18

*Am. Freedom Def. Initiative v. King County*
796 F.3d 1165 (9th Cir. 2015) ....................................................................27, 28

*Arcara v. Cloud Books, Inc.*
478 U.S. 697 (1986).........................................................................................23

*Ashcroft v. ACLU*
535 U.S. 564 (2002).........................................................................................19

*Consol. Edison Co. of N.Y. v. Pub. Serv. Comm'n of N.Y.*
447 U.S. 530 (1980).........................................................................................19

*DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.*
196 F.3d 958 (9th Cir. 1999) ..........................................................................28

*Erznoznik v. City of Jacksonville*
422 U.S. 205 (1975).........................................................................................27

*Galena v. Leone*
638 F.3d 186 (3d Cir. 2011) ............................................................................20

*Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*
452 U.S. 640 (1981).........................................................................................19

*Hill v. Colorado*
530 U.S. 703 (2000).........................................................................20, 27, 28, 29

*HomeAway.com, Inc. v. City of Santa Monica*
918 F.3d 676 (9th Cir. 2019) ..........................................................................24

ii

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Honeyfund.com, Inc. v. Governor*
  94 F.4th 1272 (11th Cir. 2024) ...............................................................10, 26, 30

*Idaho Bldg. & Const. Trades Council v. Inland Pac. Chapter of*
  *Associated Builders & Contractors, Inc.*
  801 F.3d 950 (9th Cir. 2015) ................................................................................30

*Klein v. City of San Clemente*
  584 F.3d 1196 (9th Cir. 2009) .............................................................................11

*Kumar v. Koester*
  131 F.4th 746 (9th Cir. 2025) ..............................................................................14

*Laird v. Tatum*
  408 U.S. 1 (1972)..................................................................................................17

*Lehman v. City of Shaker Heights*
  418 U.S. 298 (1974)..............................................................................................27

*Lodge 76, International Association of Machinists & Aerosmith*
  *Workers v. Wisconsin Employment Relations Commission*
  472 U.S. 132 (1976)..................................................................................30, 31, 32

*Lopez v. Candaele*
  630 F.3d 775 (9th Cir. 2010) ...............................................................................17

*LSO, Ltd. v. Stroh*
  205 F.3d 1146 (9th Cir. 2000) .............................................................................18

*Madsen v. Women's Health Center, Inc.*
  512 U.S. 753 (1994)..............................................................................................28

*Martin v. Parrish*
  805 F.2d 583 (5th Cir. 1986) ...............................................................................28

*Mazurek v. Armstrong*
  520 U.S. 968 (1997)..............................................................................................11

iii

# TABLE OF AUTHORITIES
## (continued)

**Page**

*McTernan v. City of York*
564 F.3d 636 (3d Cir. 2009) ...............................................................20

*NetChoice, LLC v. Bonta*
152 F.4th 1002 (9th Cir. 2025) ..........................................................13

*NLRB v. Le Fort Enterprises, Inc.*
791 F.3d 207 (1st Cir. 2015)...............................................................33

*Olmstead v. United States*
277 U.S. 438 (1928)............................................................................20

*Peace Ranch, LLC v. Bonta*
93 F.4th 482 (9th Cir. 2024) .................................................14, 16, 17

*Pimentel v. Dreyfus*
670 F.3d 1096 (9th Cir. 2011) ..............................................10, 11, 16

*Project Veritas v. Schmidt*
125 F.4th 929 (9th Cir. 2025) ............................................................25

*Puente Arizona v. Arpaio*
821 F.3d 1098 (9th Cir. 2016) .....................................................32, 34

*Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*
768 F.3d 938 (9th Cir. 2014) .............................................................31

*Rowan v. U.S. Post Office Dep't*
397 U.S. 728 (1970)............................................................................20

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*
547 U.S. 47 (2006)........................................................................23, 24

*San Diego Building Trades Council v. Garmon*
359 U.S. 236 (1959)..............................................................30, 31, 32

*Sign for Jesus v. Town of Pembroke*
977 F.3d 93 (1st Cir. 2020)................................................................20

iv

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Spokeo, Inc. v. Robins*
    578 U.S. 330 (2016)..................................................................................13

*Sprint Telephony PCS v. County of San Diego*
    543 F.3d 571 (9th Cir. 2008) ...................................................................31

*Susan B. Anthony List v. Driehaus*
    573 U.S. 149 (2014)....................................................................14, 16, 17

*Thomas v. Anchorage Equal Rts. Comm'n*
    220 F.3d 1134 (9th Cir. 2000) ..................................................13, 14, 16

*Thomas v. Bd. of Ed., Granville Cent. Sch. Dist.*
    607 F.2d 1043 (2d Cir. 1979) ...................................................................28

*Townley v. Miller*
    722 F.3d 1128 (9th Cir. 2013) .......................................................13, 16

*Turner Broad. Sys., Inc. v. FCC*
    512 U.S. 622 (1994)..................................................................................19

*United States v. Salerno*
    481 U.S. 739 (1987)...........................................................................*passim*

*United States v. Taketa*
    923 F.2d 665 (9th Cir. 1991) ...................................................................29

*United States v. Waggy*
    936 F.3d 1014 (9th Cir. 2019) .................................................................19

*Winter v. Nat. Res. Def. Council, Inc.*
    555 U.S. 7 (2008)......................................................................................11

*Wisconsin v. Mitchell*
    508 U.S. 476 (1993)..................................................................................24

v

# TABLE OF AUTHORITIES
## (continued)

**Page**

**CONSTITUTIONAL PROVISIONS**

United States Constitution
　Article III ........................................................................................13
　First Amendment ..........................................................*passim*

**STATUTES**

United States Code, Title 5
　§ 2302(b)(8) ...................................................................................22

United States Code, Title 18
　§ 1514A(a) .....................................................................................22

United States Code, Title 28
　§ 1292(a)(1) .....................................................................................4
　§ 1331..............................................................................................4

United States Code, Title 29
　§ 152(2)...........................................................................................33
　§ 152(3)...........................................................................................33

United States Code, Title 42
　§ 2000e-2(a)(1) ...............................................................................22

California Labor Code
　§ 1137(b)(1) ...................................................................................33
　§ 1137(b)(2) ...................................................................................33
　§ 1137(b)(3) .....................................................................................6
　§ 1137(b)(4) .....................................................................................6
　§ 1137(c) ............................................................................6, 21, 32
　§ 1137(e) ...........................................................................................8
　§ 1137(f)(1)........................................................................................8
　§ 1137(g)(1) ......................................................................................7
　§ 1137(g)(2) ......................................................................................7
　§ 1137(g)(3) ......................................................................................7
　§ 1137(g)(4) ......................................................................................7

# TABLE OF AUTHORITIES
## (continued)

**Page**

§ 1137(h)(1) ...............................................................................................8
§ 1137(h)(2) ...............................................................................................8
§ 1137(h)(3) ...............................................................................................8
§ 1137(h)(4) ...............................................................................................8
§ 1137(h)(5) ...............................................................................................7
§ 1137(h)(6) ...............................................................................................8
§ 1137(i) .....................................................................................................8

### COURT RULES

Federal Rules of Appellate Procedure
Rule 4(a)(1)(A) .....................................................................................4

### OTHER AUTHORITIES

Sarah Westwood & Yon Pomrenze, *Workers Had 3 Options: Attend Trump's Speech, Use Paid Time Off or Receive No Pay*, CNN.com (Aug. 17, 2019), https://www.cnn.com/2019/08/17/politics/workers-trump-speech-attend-pto-no-pay/index.html ...............................................................1

Sasha Ingber, *Construction Worker Sues Company, Says He Was Fired for Not Attending Bible Study* (Aug. 30, 2018), https://www.npr.org/2018/08/30/643341736/construction-worker-sues-company-says-he-was-fired-for-not-attending-bible-study .........................1

Serena Sonoma, *Shell Workers Forced to Attend Trump Rally or Lose Pay*, Out Magazine (Aug. 18, 2019), https://www.out.com/news/2019/8/18/shell-union-workers-forced-attend-trump-rally-or-lose-pay..........................................................1

Spencer Woodman, *Office Politics*, Slate (Oct. 15, 2014), https://slate.com/news-and-politics/2014/10/bipac-how-the-business-industry-political-action-committee-teaches-corporate-america-to-influence-how-its-employees-vote.html.............................................2

**INTRODUCTION**

In 2019, then-presidential candidate Donald Trump held a rally at a petrochemical plant in Pennsylvania. Workers at the plant were given a choice: attend the rally, use their own paid leave not to attend, or have their pay docked for that day.[1] Those who did not attend the rally would also lose the opportunity to receive the maximum overtime pay for the week.[2] Those who did attend the rally were told they could not protest, yell, shout, or engage in any "resistance" behavior during the rally.[3] This 2019 rally is just one of many examples of a "captive audience" meeting—a meeting an employer requires employees attend that is unrelated to the employees' job duties. Other examples include an employee in Oregon who was allegedly fired from his job for refusing to attend a weekly Bible study,[4] and construction workers at an Alaska oil plant who were called into a

---

[1] *See, e.g.*, Sarah Westwood & Yon Pomrenze, *Workers Had 3 Options: Attend Trump's Speech, Use Paid Time Off or Receive No Pay*, CNN.com (Aug. 17, 2019), https://www.cnn.com/2019/08/17/politics/workers-trump-speech-attend-pto-no-pay/index.html (last accessed December 19, 2025); Serena Sonoma, *Shell Workers Forced to Attend Trump Rally or Lose Pay*, Out Magazine (Aug. 18, 2019), https://www.out.com/news/2019/8/18/shell-union-workers-forced-attend-trump-rally-or-lose-pay (last accessed December 19, 2025).

[2] *Id.*

[3] *Id.*

[4] Sasha Ingber, *Construction Worker Sues Company, Says He Was Fired for Not Attending Bible Study*, NPR.com (Aug. 30, 2018), https://www.npr.org/2018/08/30/643341736/construction-worker-sues-company-says-he-was-fired-for-not-attending-bible-study (last accessed December 19, 2025).

1

purported safety meeting and instead lectured about how to vote on an upcoming ballot measure about tax cuts for the oil industry.[5]

These captive audience meetings raise concerns about the freedom and expressive rights of employees. Employers exercise a great deal of power over their employees through control over employees' economic wellbeing—especially in "at will" employment situations where an employee can be fired with or without cause for any lawful reason. Employers can leverage this power to force employees to listen to religious sermons or political lectures—which touch on matters at the core of one's identity and beliefs. And employees may feel compelled to listen to or even voice agreement with their employer lest they suffer economic penalties or other retaliation on the job.

Given the concerns for employees' autonomy and freedom of conscience raised by captive audience meetings, the California Legislature enacted Senate Bill 399 (SB 399). The statute added a section to the California Labor Code that prohibits employers from subjecting or threatening to subject an employee to an adverse employment action because the employee declines to participate in a meeting or listen to communications about the employer's opinion on political or

---

[5] Spencer Woodman, *Office Politics*, Slate (Oct. 15, 2014), https://slate.com/news-and-politics/2014/10/bipac-how-the-business-industry-political-action-committee-teaches-corporate-america-to-influence-how-its-employees-vote.html (last accessed December 19, 2025).

religious matters unrelated to the employee's job duties. To be clear, the bill allows employers to hold meetings and communicate their opinion on religious, political, or other matters with employees willing to listen, and it imposes no sanctions on employers for doing so. Employers are simply prohibited from punishing employees who chose not to attend meetings or receive communications that are unrelated to their job duties.

Plaintiffs are three business organizations that contend SB 399 violates their members' First Amendment rights and is preempted by the National Labor Relations Act. The lower court concluded that plaintiffs had proven a likelihood of success on both claims and preliminarily enjoined SB 399 in full. This was erroneous. At the threshold, plaintiffs lack standing for this challenge because they have not established that their members wish to engage in conduct within the scope of SB 399. Furthermore, SB 399 is neither preempted nor unconstitutional. SB 399 is not facially preempted because the statute has obvious applications that do not implicate the NLRA. SB 399 does not regulate or prohibit employer speech; rather, it solely prohibits an employer from sanctioning an employee for refusing to listen to said speech. Employers have no right under the First Amendment to compel employees to listen to unwanted speech, and SB 399 thus does not violate the First Amendment. Because plaintiffs have not shown a likelihood of success on either challenge to SB 399, the lower court's order should be reversed.

3

## STATEMENT OF JURISDICTION

The district court entered a preliminary injunction on September 30, 2025. ER-37. Defendants filed a timely notice of appeal on October 29, 2025. ER-192; *see* Fed. R. App. P. 4(a)(1)(A). The district court had jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1292(a)(1).

## STATEMENT OF ISSUES

1. Have plaintiffs made a clear showing that their members intend to engage in conduct within the scope of SB 399 so as to have standing?

2. Does SB 399, which does not restrict employer speech and only prevents employers from compelling employees to listen to unwanted speech, violate the First Amendment?

3. Is SB 399 facially preempted by the National Labor Relations Act?

## STATEMENT REGARDING ADDENDUM

Pursuant to Circuit Rule 28-2.7, pertinent statutes, regulations, and rules are contained in the separate addendum.

## STATEMENT OF THE CASE

### A. Senate Bill 399 (SB 399)

The California Legislature enacted Senate Bill 399 (SB 399) in response to concerns about captive audience meetings—meetings that are unrelated to an employee's job duties but that employers require employees to attend at risk of adverse employment action. As the author of the bill explained, "[i]n most

4

workplaces, workers are 'at will' and can be fired at any time for almost any reason." ER-108. The "tremendous power" employers hold over their employees raises concerns about employers "pressur[ing] workers to do what they say." *Id*.; *see also* ER-144 ("Due to their control over elements of the workplace such as an employee's pay and benefits, employers enjoy outsized influence on their employees' daily lives."); ER-158 ("The unequal power dynamic between an employer and its employees creates a setting ripe for intimidation. Some workers may feel compelled to adopt an employer's view on a political matter because 'people need their jobs.'" (citation omitted)). One example of employers exercising this influence over employees, the legislative history notes, is captive audience meetings that "are mandatory," where "workers are not permitted to leave or speak out." ER-108. Employers use such meetings to "attempt to coerce workers into voting for the employer's preferred candidate or adhering to their religious or political ideological beliefs." *Id*.

SB 399 was animated by the belief that "[n]o worker should be subject to forced indoctrination by their employer on politics, religion, or for exercising their protected rights on the job." ER-108. The bill "promotes workers' rights, especially those of marginalized communities, by protecting their right to advocate for themselves and opt out of conversations about politics or religion that have nothing to do with their ability to properly execute their job duties." ER-134.

Ensuring employees have "the choice to listen to the political or religious views of their employers" thus "ensur[es] that the most marginalized workers are not taken advantage of." *Id.*

Under SB 399, an employer "shall not subject, or threaten to subject, an employee to discharge, discrimination, retaliation, or any other adverse action because the employee declines to attend an employer-sponsored meeting or affirmatively declines to participate in, receive, or listen to any communications with the employer. . . , the purpose of which is to communicate the employer's opinion about religious or political matters." Cal. Labor Code § 1137(c). The statute defines "political matters" as "matters relating to elections for political office, political parties, legislation, regulation, and the decision to join or support any political party or political or labor organization." *Id.* § 1137(b)(3). It defines "religious matters" as "matters relating to religious affiliation and practice or the decision to join or support any religious organization or association." *Id.* § 1137(b)(4).

SB 399's prohibition is subject to a handful of exceptions. First, SB 399 clarifies that it does not impede an employer from requiring that employees receive information related to their job duties. In particular, SB 399 does not prohibit an employer from requiring that employees receive "any information that the employer is required by law to communicate, but only to the extent of that legal

requirement" or "any information that is necessary for those employees to perform their job duties." Cal. Labor Code § 1137(g)(1), (2). Nor does SB 399 prohibit "[a]n employer requiring employees to undergo training to comply with the employer's legal obligations, including obligations under civil rights laws and occupational safety and health laws." *Id.* § 1137(h)(5). SB 399 also does not prohibit institutions of higher learning from requiring that their employees participate in meetings or receive information that "are part of coursework, any symposia, or an academic program at that institution." *Id.* § 1137(g)(3). Finally, SB 399 does not prohibit employers that are public entities from requiring that employees receive "any information related to a policy of the public entity or any law or regulation that the public entity is responsible for administering." *Id.* § 1137(g)(4).

Second, SB 399 includes exemptions for situations that do not implicate the Legislature's concerns over coercion that are present in the typical captive audience scenario. Specifically, SB 399 provides exemptions for: (1) religious entities exempt under Title VII requiring "employees who perform work connected with the activities undertaken by" the religious entity to attend a meeting or receive communications involving the employer's "speech on religious matters," (2) "[a] political organization or party requiring its employees to attend an employer-sponsored meeting or to participate in any communications . . . the purpose of

7

which is to communicate the employer's political tenets or purposes," (3) "[a]n educational institution requiring a student or instructor to attend lectures on political or religious matters that are part of the regular coursework at the institution," (4) "[a] nonprofit, tax-exempt training program requiring a student or instructor to attend classroom instruction, complete fieldwork, or perform community service hours on political or religious matters as it relates to the mission of the training program or sponsor," and (5) "[a] public employer holding a new employee orientation" required under state law. Cal. Labor Code § 1137(h)(1)-(4), (h)(6).

The California Labor Commissioner is authorized to enforce SB 399, "including investigating an alleged violation, and ordering appropriate temporary relief to mitigate a violation or maintain the status quo pending the completion of a full investigation or hearing." Cal. Labor Code § 1137(e). Additionally, "any employee who has suffered a violation" may bring a civil action for damages. *Id.* § 1137(f)(1). Finally, SB 399 contains a severability clause. *Id.* § 1137(i).

## B. Procedural History

Plaintiffs are three businesses associations: plaintiff California Chamber of Commerce is a nonprofit business association with approximately 13,000 members in California, ER-163; plaintiff California Restaurant Association is a nonprofit business association for those in the restaurant industry in California, ER-173; and

8

plaintiff Western Growers Association is a nonprofit business association representing nearly 2,400 farmers across California and other western states, ER-168. At the end of December 2024, plaintiffs brought suit challenging SB 399 against Attorney General Rob Bonta and Labor Commissioner Lilia García-Brower, in their official capacities, as well as the California Division of Labor Standards Enforcement. ER-182. Plaintiffs contended that SB 399 violates their members' First Amendment rights, is unconstitutionally vague, and is preempted by the National Labor Relations Act (NLRA). ER-184-188. They sought a declaration of SB 399's invalidity and a permanent injunction against enforcement. ER-190.

After filing suit, plaintiffs moved to preliminarily enjoin SB 399. The lower court granted a preliminary injunction of SB 399 in its entirety. It first held that plaintiffs had standing to bring a pre-enforcement challenge to SB 399. ER-10. The court "agree[d] that the pleadings do not thoroughly express an intent to violate SB 399" on the part of plaintiffs' members, but nevertheless found standing existed "given the government's failure to disavow enforcement of SB 399 and the allegations of chilled speech that [plaintiffs] plausibly make[]." ER-10-11.

Next, the lower court addressed plaintiffs' claim that SB 399 is preempted by the National Labor Relations Act (NLRA). Applying the standard in *United States v. Salerno*, 481 U.S. 739 (1987), to plaintiffs' facial preemption challenge, the

9

court held that SB 399 was preempted "to the extent that it expressly covers meetings relate[d] to whether or not to join a labor organization." ER-21; *see also* ER-26.

Finally, the lower court held that plaintiffs were also likely to prevail on their facial First Amendment challenge to SB 399. ER-37. It held that SB 399 is subject to First Amendment scrutiny because "'the conduct regulated depends on—and cannot be separated from—the ideas communicated.'" ER-28 (quoting *Honeyfund.com, Inc. v. Governor*, 94 F.4th 1272, 1278 (11th Cir. 2024)). And because "enforcing SB 399 would require referencing the content of the employer's speech in determining whether the adverse employment action was proper," the court held the statute was subject to strict scrutiny, and that it failed to meet that standard. ER-29; *see also* ER-26. The court further held that SB 399 was not valid as a protection for a captive audience, stating that "it is simply not the case that employees are 'captive' in the same sense as one who is riding a bus." ER-33. Finding the remaining factors for a preliminary injunction were also met, the court entered a preliminary injunction of SB 399 in full. ER-37.

## STANDARD OF REVIEW

This Court reviews the grant of a preliminary injunction for abuse of discretion. *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2011) (per curiam). To do so, it first determines de novo whether the trial court "'identified the correct

10

legal rule to apply to the relief requested.'" *Id*. (citation omitted). It then determines "if the 'district court's application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in the inferences that may be drawn from the facts in the record.'" *Id*. (citation omitted). The Court reviews conclusions of law de novo and findings of fact for clear error. *Id.*

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The party seeking a preliminary injunction must establish that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Id.* at 20. Plaintiffs, as the movants here, bear the burden of proving each element. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009). They must do so by a "clear showing." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

## SUMMARY OF ARGUMENT

The lower court's ruling that plaintiffs have established a likelihood of success on the merits was erroneous. At the threshold, plaintiffs have not made the requisite clear showing of standing for this pre-enforcement challenge. Plaintiffs have not demonstrated that their members intend to engage in conduct within the scope of SB 399, and thus that their members have an actual injury in fact. Indeed,

plaintiffs have put forth *no* allegations or evidence that any of their members wish to punish or retaliate against an employee for refusing to attend a meeting or receive communications on political or religious matters unrelated to the employee's job duties—the only conduct within the scope of SB 399.

But even if plaintiffs had established standing, the lower court erred in concluding they were likely to succeed on either of their challenges to SB 399. First, the court erred in concluding that SB 399 is invalid under the First Amendment. While the First Amendment protects the right to speak, it does not provide a right to compel others to listen to that speech. SB 399 does not require or prohibit any speech, but rather solely prevents an employer from punishing or retaliating against an employee who declines to listen to or receive communications regarding the employer's political and religious opinions. The statute thus does not implicate the First Amendment to begin with. But even if it did, SB 399 is still constitutional as a valid protection of a captive audience.

Second, the lower court erred in holding plaintiffs had established that SB 399 is facially preempted by the NLRA. A facial preemption challenge is reviewed under the *Salerno* standard, and thus a law is preempted only if it has *no* non-preempted applications. But SB 399 has numerous applications that are not even arguably subject to NLRA preemption, such as employers punishing or retaliating against employees who refuse to attend prayer meetings or receive

12

communications about the employer's opinion on presidential candidates. The statute is thus not facially preempted by the NLRA.

## ARGUMENT

### I.   PLAINTIFFS HAVE NOT ESTABLISHED STANDING

For federal jurisdiction to exist, a plaintiff must have standing as required by Article III. The "'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* The burden is on the plaintiff to demonstrate standing under the applicable standards at the stage of litigation at which standing is challenged. *Id.* "At the preliminary injunction stage, plaintiffs must make a clear showing of each element of standing." *Townley v. Miller*, 722 F.3d 1128, 1133 (9th Cir. 2013). An organization, such as plaintiffs here, can assert its members' claims only when it establishes "that its members would have standing to sue on their own." *NetChoice, LLC v. Bonta*, 152 F.4th 1002, 1013 (9th Cir. 2025).

Previously, this Court reviewed pre-enforcement standing under a multifactor test known as the *Thomas* test, from *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134 (9th Cir. 2000) (en banc). This test considered "whether the

13

plaintiffs have articulated a 'concrete plan' to violate the law in question, whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and the history of past prosecution or enforcement under the challenged statute." *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 487 (9th Cir. 2024) (quoting *Thomas*, 220 F.3d at 1139). However, this Court now applies a three-part test drawn from *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), to determine if a plaintiff has established pre-enforcement standing. *See Peace River*, 93 F.4th at 487 (adopting the *Driehaus* test). Under this test, "[a] plaintiff has a sufficient injury for a pre-enforcement challenge" when they establish that they have (1) "'an intention to engage in a course of conduct arguably affected with a constitutional interest'" that is (2) "'proscribed by a statute'" and that (3) "'there exists a credible threat of prosecution thereunder.'" *Kumar v. Koester*, 131 F.4th 746, 752 (9th Cir. 2025) (quoting *Driehaus*, 573 U.S. at 158-59).

Under the *Driehaus* test, plaintiffs lack standing because they have failed to establish that their members intend to engage in a course of conduct arguably proscribed by SB 399. Consider, first, the declarations submitted in support of plaintiffs' motion for a preliminary injunction, none of which come from plaintiffs' members. Instead, the declarations come from California Chamber's Executive Vice President Ben Golombek, Western Growers Association's Vice President Cory Lunde, and California Restaurant Association's President Jot Condie. ER-

14

163, ER-168, ER-173. Each of the three declarants attests that they have "personal knowledge of the [plaintiff's] operations and the actions it takes on behalf of its members." ER-163, ER-168, ER-173.

None of these declarations allege that any of plaintiffs' members wish to engage in conduct within the scope of SB 399. Instead, the declarants state that members' *employees* "internally discuss labor issues and other 'political matters' including proposed legislation, administrative regulations, elections, and court decisions." ER-164, ER-168, ER-173. The declarants also state in a conclusory fashion that their members "are directly impacted by SB 399 because these discussions include meetings that are outside the job duties of the respective members' employees." ER-164, ER-168-169, ER-174. But SB 399 has no impact on employees engaging in voluntary discussions on any issue, including with their employers. Each declarant also notes that plaintiffs' members "held meetings" regarding specific topics—namely the impact of Proposition 32, California's Private Attorneys General Act and reform thereof, and measures on the ballot in 2024. ER-164, ER-169, ER-174. But SB 399 does not prohibit an employer from holding meetings on *any* topic, including political or religious topics. Instead, SB 399 only prohibits punishing or retaliating against an employee who refuses to attend such meetings—something *no* declarant attests that a member wishes to do.

15

Nor do the allegations in plaintiffs' complaint establish plaintiffs' members intend to engage in conduct within the scope of SB 399. The complaint states only that plaintiffs' members engage in "employer sponsored meetings, speech, or other communications" with their employees, ER-181. SB 399 does not prevent plaintiffs' members from continuing such communications. Like the supporting declarations, plaintiffs' complaint does not allege that plaintiffs' members wish to punish or retaliate against employees who refuse to attend such meetings or receive such communications. Plaintiffs have thus failed to make a "clear showing," *Townley*, 722 F.3d at 1133, that their members intend to engage in a course of conduct proscribed by SB 399. They have therefore failed to establish their members' standing, let alone their own, for this pre-enforcement challenge.

The lower court erred in concluding to the contrary. First and foremost, the lower court applied the wrong legal test to determine pre-enforcement standing. Rather than applying the three-prong test drawn from *Driehaus* that this Court now uses, the lower court applied the obsolete *Thomas* multifactor test. *See* ER-10. Such an error in itself constitutes an abuse of discretion. *See Pimentel*, 670 F.3d at 1105. Nor was this error merely technical. While the two tests have some overlap, they are distinct. *See Peace Ranch*, 93 F.4th at 487. Notably, while the *Thomas* test was a multifactor analysis, the *Driehaus* test requires a plaintiff demonstrate that *all three* elements are met. *E.g.*, *Am. Encore v. Fontes*, 152 F.4th 1097, 1114-

1119 (9th Cir. 2025) (evaluating whether plaintiffs had established all three elements); *Peace Ranch*, 93 F.4th at 488-490 (same). The lower court's analysis does not hold plaintiffs to that burden; indeed, the court held that plaintiffs had established standing even though it found that plaintiffs had *not* "thoroughly express[ed] an intent to violate SB 399." ER-10. Such a conclusion is impossible under the *Driehaus* test, where plaintiffs must make such a demonstration to establish standing.

Nor does the fact that defendants have not disclaimed a willingness to enforce SB 399 or that plaintiffs allege their members' speech is chilled support the lower court's conclusion. For one, under the *Driehaus* test, plaintiffs must *independently* establish their members intend to engage in conduct within the scope of SB 399. *See supra* at 16-17. Plaintiffs have failed to do so here. Moreover, the burden is *on plaintiffs* to "demonstrate a 'substantial threat' of enforcement" to meet the *Driehaus* test. *Peace Ranch*, 93 F.4th at 489 (quoting *Driehaus*, 573 U.S. at 164). "[S]elf-censorship alone is insufficient to show injury," as is "the mere existence of a proscriptive statute [or] a generalized threat of prosecution." *Am. Encore*, 152 F.4th at 1114 (internal quotation marks and citations omitted) (alteration in original). And "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972); *see also Lopez v. Candaele*, 630 F.3d

17

775, 792 (9th Cir. 2010) ("Although Lopez alleges that his speech was chilled . . . , self-censorship alone is insufficient to show injury.").

Instead, plaintiffs must "adduce[] enough evidence to show that there is a realistic threat that the law in question may be enforced against" their members specifically. *Am. Encore*, 152 F.4th at 1118. The simple fact that the government has failed to disclaim the intent to enforce the law, standing alone, does not show such a realistic threat exists. *See LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000) ("[W]e cannot go so far as to say that a plaintiff has standing whenever the Government refuses to rule out use of the challenged provision."). In any event, such a threat could not remediate plaintiffs' failure to establish their members' intent to engage in conduct within the scope of SB 399, which they must do to establish standing. Because they have not, plaintiffs lack standing, and the lower court's decision should be reversed for this reason alone.

## II. PLAINTIFFS HAVE NOT ESTABLISHED A LIKELIHOOD OF SUCCESS ON THE MERITS OF THEIR CHALLENGE TO SB 399

Even if plaintiffs had established standing, they have still failed to demonstrate a likelihood of success on the merits of their First Amendment or NLRA preemption claims.

### A. SB 399 Is Not Unconstitutional Under the First Amendment

SB 399 does not violate the First Amendment. It is axiomatic that while the First Amendment protects one's right to speak, it does not guarantee one the right

18

to force others to listen to that speech. SB 399 does not prohibit or require any speech, but rather only prevents an employer from compelling unwilling employees to listen. Since that does not implicate an employer's First Amendment rights to begin with, SB 399 is constitutional. But even if SB 399 were subject to First Amendment scrutiny, it is constitutional as a protection of a captive audience.

**1. The First Amendment Does Not Include the Right to Compel an Audience to Listen**

The First Amendment provides that the government "shall make no law . . . abridging the freedom of speech." U.S. Const., amend. I. "At the heart of the First Amendment lies the principle that each person should decide for himself or herself the ideas and beliefs deserving of expression, consideration, and adherence." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 641 (1994). The First Amendment thus plays a key role "in affording the public access to discussion, debate, and the dissemination of information and ideas." *Consol. Edison Co. of N.Y. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 530, 541 (1980) (citation omitted).

"The right to free speech, however, 'is not absolute.'" *United States v. Waggy*, 936 F.3d 1014, 1017 (9th Cir. 2019) (quoting *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002)). The First Amendment "does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981). It "does not guarantee a speaker the most effective means of

19

communication of his message." *Galena v. Leone*, 638 F.3d 186, 204 (3d Cir. 2011). It "does not guarantee a right to the most cost-effective means" of communication. *Sign for Jesus v. Town of Pembroke*, 977 F.3d 93, 107 (1st Cir. 2020) (citation omitted). It "does not guarantee a speaker an absolute right to actual conversation with . . . his audience in every circumstance." *McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009).

And, as relevant here, the First Amendment does not guarantee the right to force an audience to listen. The Supreme Court has held that, on the contrary, "no one has a right to press even 'good' ideas on an unwilling recipient." *Rowan v. U.S. Post Office Dep't*, 397 U.S. 728, 738 (1970). "While the freedom to communicate is substantial, 'the right of every person to be let alone must be placed in the scales with the right of others to communicate.'" *Hill v. Colorado*, 530 U.S. 703, 718 (2000) (quoting *Rowan*, 397 U.S. at 736). Thus, the Court has "repeatedly recognized the interests of unwilling listeners" *not* to listen. *Id.* at 718; *see also id.* at 716 ("The unwilling listener's interest in avoiding unwanted communication has been repeatedly identified in our cases."). This freedom from unwanted communications is "an aspect of the broader 'right to be let alone' that one of our wisest Justices characterized as 'the most comprehensive of rights and the right most valued by civilized men.'" *Id.* at 716-717 (quoting *Olmstead v. United States*, 277 U.S. 438, 478 (1928) (Brandeis, J., dissenting)).

20

### 2. SB 399 Is Not Subject to First Amendment Scrutiny Because It Only Protects Employees from Being Compelled to Listen

SB 399 does not implicate First Amendment scrutiny because it does not regulate speech. Instead, it solely protects employees from being compelled to listen to an employer's speech unrelated to their job duties. Because employers do not have a First Amendment right to compel their employees to serve as an unwilling audience, SB 399 does not trigger First Amendment scrutiny.

On its face, SB 399 does not regulate speech. Under SB 399, an employer "shall not subject, or threaten to subject, an employee to discharge, discrimination, retaliation, or any other adverse action because the employee declines to attend an employer-sponsored meeting or affirmatively declines to participate in, receive, or listen to any communications with the employer . . . the purpose of which is to communicate the employer's opinions about religious or political matters." Cal. Labor Code § 1137(c). The action that triggers an employer's exposure to sanctions under SB 399 is "subject[ing] or threaten[ing] to subject an employee to discharge, discrimination, retaliation, or any other adverse action." *Id.* That is conduct, not speech. Were it otherwise, the many state and federal laws that limit an employer's ability to impose adverse employment actions on an employee, such

21

as anti-discrimination laws or protections for whistleblowers, would also regulate expressive activity.[6]

At the same time, SB 399 does not prohibit an employer from expressing its opinion on any subject, including religious and political matters, to its employees or expose an employer to liability for its communicative activities. The statute nowhere says an employer may not hang fliers or posters, send out mailers, issue press releases, distribute handouts, maintain websites, give interviews, purchase advertisements, email its employees, or hold meetings to express its opinions on any topic, including religious or political matters. Indeed, the legislative history is clear on this point: the Legislature had no intent to limit *any* speech by employers. *See* ER-118, ER-119, ER-134, ER-144, ER-146, ER-158. As the law's author explained, under SB 399, "employers are still free to discuss their religious, political, and anti-union views with workers." ER-118; *see also* ER-134, ER-144. All they may not do is punish an employee who refuses to listen.

---

[6] *See, e.g.*, 5 U.S.C. § 2302(b)(8) (public employer may not "take or fail to take, or threaten to take or fail to take, a personnel action" due to employee's whistleblowing activities); 18 U.S.C. § 1514A(a) (companies may not "discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment" due to whistleblowing activities); 42 U.S.C. § 2000e-2(a)(1) (unlawful for an employer "to fail or refuse to hire or to discharge an individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin").

Ultimately, SB 399 "neither limits what [employers] may say nor requires them to say anything." *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 60 (2006). Employers "remain free under the statute to express whatever views" they wish on any topic they wish. *Id.* Instead, SB 399 only "affects what [employers] must [not] *do*"—punish or retaliate against an employee—"not what they may or may not *say*." *Id.* (emphasis in original). SB 399 therefore does not regulate speech. It solely prevents an employer from using its power over its employees to *compel listening*. And employers have no First Amendment right to force their employees to listen. *See supra* at 18-20.

Nor is the notion that SB 399 may have an impact on speech sufficient for it to trigger First Amendment scrutiny. On the contrary, First Amendment scrutiny is not triggered simply because a law has *some* impact on speech. *E.g.*, *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 705-06 (1986). Courts "have not traditionally subjected every" law "to 'least restrictive means' scrutiny simply because each particular [law] will have some effect on the First Amendment activities of those subject to sanction." *Id.* at 706. After all, "every civil and criminal remedy imposes some conceivable burden on First Amendment protected activities." *Id.* Instead, as this Court has emphasized, "the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on

23

speech." *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 685 (9th Cir. 2019) (citation omitted).

Courts have thus recognized that regulations of conduct, such as laws prohibiting employment discrimination and retaliation, do not trigger heightened First Amendment scrutiny, even if they have an incidental impact on speech. "Congress, for example, can prohibit employers from discriminating in hiring on the basis of race," and "[t]he fact that this will require an employer to take down a sign reading 'White Applicants Only' hardly means that the law should be analyzed as one regulating the employer's speech rather than conduct." *Rumsfeld*, 547 U.S. at 62; *see also Wisconsin v. Mitchell*, 508 U.S. 476, 487 (1993) (Supreme Court has "rejected the argument that Title VII infringed employers' First Amendment rights"). Just like numerous other laws prohibiting retaliation against employees or regulating employee discipline, SB 399 has only an incidental effect on speech. This sort of incidental impact on speech does not make SB 399 subject to First Amendment scrutiny.

The lower court thus erred in reaching the opposite conclusion. It concluded that SB 399 is subject to strict scrutiny because "enforcing SB 399 would require referencing the content of the employer's speech in determining whether the adverse employment action was proper." ER-32; *see also* ER-30. But in so doing, the lower court failed to adequately grapple with the proper threshold inquiry

24

under the First Amendment: whether the law is a regulation of speech such that it is subject to First Amendment scrutiny to begin with. *See, e.g.*, *Project Veritas v. Schmidt*, 125 F.4th 929, 942 (9th Cir. 2025) (en banc) ("threshold question" is whether law regulates speech). Instead, the lower court conflated the secondary question of whether a law is content-based or content-neutral with this antecedent question. *See, e.g.*, *id.* at 946 (court "next consider[s]" whether statute is content-based or content-neutral).

The lower court also viewed the statute as a regulation of speech because it had "the inevitable effect of being directed towards employers who chose to engage in core expressive activity—sharing their opinions on religious and political matters." ER-28. But SB 399 does not regulate an employer *because of* their speech; it solely regulates an employer that *compels employees to listen*. *See supra* at 20-23. As the legislative history explains, an employer who speaks faces no sanction under SB 399 "unless and until the employer takes an adverse action against [an] employee for exercising their right to decline" to listen. ER-119; *see also* ER-146. Thus, the lower court's reasoning collapses together two discrete employer actions into one: an employer speaking and an employer punishing or retaliating against employees who refuse to listen. Collapsing these together elides important differences between the two—critically, that the First Amendment

protects the right to speak, but does not provide a right to compel others to listen to that speech, *see supra* at 19-20.

Nor is this a case where the Legislature acted out of an improper desire to silence or suppress speech. The Legislature was clear that it was not seeking to silence any speech, but rather to protect employees from being forced to listen to an employer's unwanted speech on political or religious matters unrelated to their job. *See supra* at 4-6. Had the Legislature enacted SB 399 out of an intent to specifically silence certain viewpoints or messages it disliked, the First Amendment certainly would have been implicated—just as it was in *Honeyfund.com, Inc. v. Governor*, 94 F.4th 1272 (11th Cir. 2024), where Florida enacted a law to "protect Floridians from [] dangerous and offensive speech— whether they wish to hear it or not." *Id.* at 1276. But SB 399 is not such a law. Instead, SB 399 solely protects those employees who do not want to listen, without interfering with employer communications with employees who do. And because SB 399 does not prohibit any speech, but rather prevents only compelling unwilling employees to listen, it does not trigger First Amendment scrutiny at the threshold.

### 3. Even if SB 399 Does Regulate Speech, It Is Permissible as Protection of an Unwilling Audience

Even if SB 399 were a regulation of speech, it is constitutional as a protection of a captive audience. The Supreme Court has recognized that a State may,

consistent with the First Amendment, restrict speech when "the degree of captivity makes it impractical for the unwilling viewer or auditor to avoid exposure." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 209 (1975). While "an offer by one to communicate and discuss information with a view to influence the other's action [is] not regarded as aggression or a violation of that other's rights," if "the offer is declined, as it may rightfully be, then persistence, importunity, following and dogging become unjustifiable annoyance and obstruction which is likely soon to savor of intimidation. From all of this the person sought to be influenced has a right to be free." *Hill*, 530 U.S. at 717 (citation omitted).

Courts have thus held that a State may regulate speech when an unwilling audience lacks the capacity to reasonably avoid undesirable speech. For instance, "[p]ublic transit riders are, by necessity, a 'captive audience.'" *Am. Freedom Def. Initiative v. King County*, 796 F.3d 1165, 1170 (9th Cir. 2015) (citing *Lehman v. City of Shaker Heights*, 418 U.S. 298, 302 (1974)). Public transportation is "a practical necessity for millions in our urban centers," and riders "of necessity become commuters and at the same time captive viewers or listeners." *Lehman*, 418 U.S. at 307 (Douglas, J., concurring). The Supreme Court and this Court have thus held that a State can permissibly regulate the content of advertisements on public transit to further "the right of the commuters to be free from forced intrusions on their privacy." *Id.*; *see also, e.g., Am. Freedom Defense Initiative*,

27

796 F.3d at 1170.  So, too, may the State regulate speech at healthcare facilities to protect the "well-being of the patient held 'captive' by medical circumstances,"[7] or the speech on school premises to protect "students who constitute a captive audience."[8]

Just like public transit riders, patients, and students, employees are a "captive audience" in the workplace.  Indeed, the degree of compulsion to which employees may be subject is at least as strong as that in other cases that have upheld speech restrictions as necessary to protect freedom of conscience.  Most of us spend a significant portion of our adult lives in a workplace setting and depend on our jobs for economic security, the ability to obtain life's necessities, and even our families' access to health care.  The threat of losing those benefits is not something most workers can easily ignore.  Forced to choose between, on one hand, honoring one's religious or political beliefs and, on the other, the ability to pay the rent next month or take a sick child to the doctor, many may choose to sacrifice cherished beliefs for financial security for themselves and their families.  But the First Amendment

---

[7] *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 768 (1994); *see also Hill*, 530 U.S. at 717.

[8] *Thomas v. Bd. of Ed., Granville Cent. Sch. Dist.*, 607 F.2d 1043, 1049 (2d Cir. 1979); *see also, e.g.*, *DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.*, 196 F.3d 958, 968 (9th Cir. 1999); *Martin v. Parrish*, 805 F.2d 583, 586 (5th Cir. 1986).

does not require that an employee "'undertake Herculean efforts to escape'" their employer's political or religious opinions. *Hill*, 530 U.S. at 716 (citation omitted).

In holding to the contrary, the lower court first focused on the fact that the State had not "pointed to any authority suggesting that employees have a right to privacy in the workplace that is akin, for example, to the right of privacy an abortion patient has in one's home or in attending a doctor's appointment." ER-34. This was erroneous. An employee does have a privacy interest in the workplace. *See, e.g.*, *United States v. Taketa*, 923 F.2d 665, 671 (9th Cir. 1991) (public employees can have reasonable expectation of privacy in private workspace). Indeed, an employee has just as much, if not more, of a privacy interest in avoiding unwanted speech in the workplace as a commuter does while riding a bus or a student does while attending a lecture—and both commuters and students have been held to be captive audiences, *see supra* at 27-28. This is especially so given that SB 399 is specifically meant to allow employees the freedom to decide whether to listen to their employers about matters at the core of one's own identity: religion and politics.

The lower court also based its conclusion on its contention that "it is simply not the case that employees are 'captive' in the same sense as one who is riding a bus." ER-33. Not so. An employee in the workplace does experience a "degree of captivity that makes it impractical for the willing listener to avoid exposures,"

29

ER-34.  Unlike a walker at a public park who can look away from profanity on a jacket or a radio listener who can simply change the channel—or a commuter who can simply exit the bus and take the next one—an employee cannot simply decline an order from their employer.  After all, doing so may mean the employee will lose their job, face the loss of pay or other employment benefits, or risk other adverse employment actions.  And this is not merely a hypothetical concern.  The examples cited at outset of this brief, *see supra* at 1-2, have happened recently.  "[E]nduring speech we dislike" may be a "necessary price" for living in society with others, ER-34 (quoting *Honeyfund.com*, 94 F.4th at 1283 n.5), but it should not be a "necessary price" to keep one's employment.  SB 399 protects employees from having to pay such a price.

## B.     SB 399 Is Not Facially Preempted by the National Labor Relations Act

The lower court further erroneously held that SB 399 is facially preempted by the National Labor Relations Act.  "Preemption derives from the Supremacy Clause, which 'invalidates state laws that interfere with, or are contrary to, federal law.'"  *Am. Apparel & Footwear Ass'n, Inc. v. Baden*, 107 F.4th 934, 938 (9th Cir. 2024) (citation omitted).  While the National Labor Relations Act contains no preemption clauses, "the Supreme Court has held that 'Congress implicitly mandated two types of pre-emption as necessary to implement federal labor policy,'" known as *Machinists* and *Garmon* preemption.  *Idaho Bldg. & Const.*

30

*Trades Council v. Inland Pac. Chapter of Associated Builders & Contractors, Inc.*, 801 F.3d 950, 956 (9th Cir. 2015) (citation omitted). The first, *Garmon* preemption,[9] "'is intended to preclude state interference with the National Labor Relations Board's interpretation and active enforcement of the integrated scheme of regulation established by the NLRA.'" *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 951 (9th Cir. 2014) (citation omitted). The second, *Machinists* preemption,[10] "'forbids both the [National Labor Relations Board] and States to regulate conduct that Congress intended to be unregulated because left to be controlled by the free play of economic forces.'" *Id.* (citation omitted)).

Plaintiffs bring a facial preemption challenge to SB 399 and seek to enjoin the entire statute on that basis. *See* ER-65, ER-75, ER-76-77, ER-100, ER-188, ER-190. In evaluating such a claim, this Court applies the standard for facial challenges laid out in *United States v. Salerno*, 481 U.S. 739 (1987). *See, e.g.*, *Am. Apparel*, 107 F.4th at 938 ("The *Salerno* rule applies to a federal preemption facial challenge to a state statute."); *Sprint Telephony PCS v. County of San Diego*, 543 F.3d 571, 579 n.3 (9th Cir. 2008) (en banc) ("In cases involving federal preemption

---

[9] From *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959).

[10] From *Lodge 76, International Association of Machinists & Aerosmith Workers v. Wisconsin Employment Relations Commission*, 472 U.S. 132 (1976).

of a local statute, however, the [*Salerno*] rule applies with full force.").  To demonstrate success on a facial preemption challenge, a plaintiff must establish "that 'no set of circumstances exists under which the Act would be valid.'"  *Puente Arizona v. Arpaio*, 821 F.3d 1098, 1104 (9th Cir. 2016) (quoting *Salerno*, 481 U.S. at 746).  That is, plaintiffs must show that SB 399 is "invalid in all [its] applications."  *Am. Apparel*, 107 F.4th at 939.  Where a statue has "obvious constitutional applications,"—that is, obvious non-preempted applications—it is not facially preempted.  *Puente Arizona*, 821 F.3d at 1104.

SB 399 has numerous obvious applications that do not even implicate the NLRA to begin with.  The statute prohibits an employer from punishing or retaliating against an employee that "declines to attend an employer-sponsored meeting or affirmatively declines to participate in, receive, or listen to any communications with the employer . . . , the purpose of which is to communicate the employer's opinion about religious or political matters."  Cal. Labor Code § 1137(c). SB 399 is thus not limited to situations that involve labor rights.  It would apply, for instance, to an employer who withholds pay from an employee who refused to attend a politician's campaign speech.  *See* ER-109; *supra* at 1.  It would apply to an employer denied a promotion to an employee who refused to attend a meeting arguing why the employees should vote a certain way on a ballot proposition.  *See supra* at 2.  And it would apply to an employer who fired an

32

employee who refused to attend a prayer meeting. *See supra* at 1. None of these situations implicate the NLRA.

Even with respect to communications and meetings about labor issues, not every application of SB 399 would implicate the NLRA. For instance, the NLRA does not apply to government employers, but SB 399 does. *Compare* 29 U.S.C. § 152(2) ("employer" does not include "any State or political subdivision thereof"), *with* Cal. Labor Code § 1137(b)(2) ("employer" includes "all branches of state government, or the several counties, cities and counties, and municipalities"). Small businesses, too, fall outside the scope of the NLRA but remain subject to SB 399. *See, e.g.*, *NLRB v. Le Fort Enterprises, Inc.*, 791 F.3d 207, 209-210 (1st Cir. 2015) (National Labor Relations Board "exercises jurisdiction over a retail enterprise if it has a gross annual business volume of at least $500,000"); *cf.* ER-181 (75% of plaintiff California Chamber of Commerce's members have fewer than 100 employees). And the NLRA does not cover employees who are agricultural laborers or work for one's parents or spouse, while SB 399 does. *Compare* 29 U.S.C. § 152(3) (definition of "employee"), *with* Cal. Labor Code § 1137(b)(1) (same); *cf.* ER-168 (plaintiff Western Growers Association represents family farmers). Issues related to unionization or labor organization membership for employers who are *not* subject to the NLRA would not implicate the NLRA. As all of these examples demonstrate, SB 399 has

33

obvious non-preempted, constitutional applications. It therefore is not facially preempted by the NLRA.

The lower court thus erred in holding that plaintiffs were likely to succeed on their facial NLRA preemption claim. Though the lower court recognized that the *Salerno* standard applies, *see* ER-14, it failed to consider or take account of the non-preempted applications of SB 399. Instead, the lower court's analysis focuses solely on a *subset* of applications, namely those involving employer meetings or communications about unionization for employers subject to the NLRA. *See, e.g.*, ER-21. But "[j]ust because some applications" of SB 399 involve labor-related issues that might implicate the NLRA "does not mean that the statute as a whole should be struck down." *Puente Arizona*, 821 F.3d at 1107-1108. That was precisely the error that led to this Court's reversal of a preliminary injunction granted based on a facial preemption claim in *Puente Arizona*: the plaintiff's preemption arguments "applie[d] to only certain applications" of the statute. *Id.* at 1108. This Court thus could not "say that every application [was] unconstitutional," making facial invalidation improper. *Id.*

So, too, here. SB 399 can be applied in ways that do not implicate the NLRA whatsoever. Plaintiffs have not—and cannot—show that *every* application of SB 399 is preempted. The lower court thus erred in issuing a preliminary injunction of SB 399 in full predicated on a facial preemption claim.

34

## CONCLUSION

For the foregoing reasons, the order of the lower court should be reversed and the preliminary injunction vacated.

Dated:  December 19, 2025

Respectfully submitted,

*s/Kristin Liska*

Rob Bonta
  *Attorney General of California*
Thomas S. Patterson
  *Senior Assistant Attorney General*
Anya M. Binsacca
  *Supervising Deputy Attorney General*
KRISTIN A. LISKA
  *Deputy Attorney General*

35

## STATEMENT OF RELATED CASES

The following related case is pending:

*California Policy Center, Inc. v. García-Brower*, No. 25-6173

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 25-6874

I am the attorney or self-represented party.

**This brief contains** | 8,126 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [          ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Kristin Liska | **Date** | December 19, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at *forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/22*