*Appeal No. 25-6874*

# IN THE

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

CALIFORNIA CHAMBER OF COMMERCE, *et al.*,

*Plaintiffs-Appellees,*

v.

ROBERT BONTA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL
OF THE STATE CALIFORNIA, *et al.*,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Eastern District of California
Hon. Daniel J. Calabretta
Case No. 2:24-cv-03798-DJC-SCR

## APPELLEES' ANSWERING BRIEF ON THE MERITS

Lonnie D. Giamela
E-Mail: lgiamela@fisherphillips.com
FISHER & PHILLIPS LLP
444 South Flower Street, Suite 1500
Los Angeles, California 90071
Telephone: (213) 330-4500
Facsimile: (213) 330-4501

Attorneys for Plaintiffs - Appellees

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................9

STATEMENT OF JURISDICTION.........................................................12

STATEMENT OF ISSUES ......................................................................13

STATEMENT OF ADDENDUM .............................................................14

STATEMENT OF THE CASE..................................................................15

STANDARD OF REVIEW ......................................................................17

SUMMARY OF ARGUMENT ................................................................18

ARGUMENT ............................................................................................20

    I.    STANDING..................................................................................20

        A.    The District Court Applied the Correct Legal Test to Determine Pre-Enforcement Standing. .....................................................20

        B.    The District Court Correctly Found that Challengers Have Pre-Enforcement Standing Under the Applicable Legal Test. ........23

            1.    Challengers' employer members intend to engage in a course of conduct arguably affected with a constitutional interest..................................................................23

            2.    Challengers' employer members' intended conduct is arguably proscribed by SB 399. ...................................25

            3.    Challengers' employer members risk a credible threat of prosecution................................................................29

    II.    FIRST AMENDMENT .................................................................32

        A.    The District Court Properly Rejected Defendants' Conduct-Not-Speech Theory. ...............................................................33

1

B.     The District Court Properly Rejected Defendants' Attempt to Analogize SB 399 to Anti-Discrimination and Anti-Retaliation Laws. .................................................................................35

C.     The District Court Properly Rejected Defendants' "Captive-Audience" Theory. ...............................................................36

D.     SB 399 Fails Even Under Intermediate Scrutiny......................40

III.    PREEMPTION ..................................................................................41

A.     The District Court Correctly Applied Federal Preemption Law. .......................................................................................42

B.     SB 399 Cannot Be Severed Under California Law to Avoid Facial Preemption. ...................................................................48

CONCLUSION ............................................................................................53

2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. City of Costa Mesa*,
718 F.3d 800 (9th Cir. 2013) ...................................................................49

*Amazon.com Services LLC*,
373 NLRB No. 136 (2024) .......................................................................27

*Amazon.com Services, LLC v. NLRB*,
No. 23-13819 ............................................................................................27

*Amcast Automotive of Indiana, Inc.*,
348 NLRB 836 (2006) ..............................................................................46

*American Encore v. Fontes*,
152 F.4th 1097 (9th Cir. 2025) ...........................................................21, 25

*Arizona v. Yellen*,
34 F.4th 841 (9th Cir. 2022) ...........................................................21, 25, 29

*Babbitt v. Farm Workers*,
442 U.S. 289 (1979)..................................................................................28

*Bates v. Pakseresht*,
146 F.4th 772 (9th Cir. 2025) ...................................................................35

*Birkenfeld v. City of Berkeley*,
550 P.2d 1001 (Cal. Sup. Ct. 1976)..........................................................50

*Motor City Pawn Brokers Inc.*,
369 NLRB No. 132 (2020) ........................................................................47

*Cal. Redevelopment Assn. v. Matosantos*,
267 P.3d 580 (Cal. Sup. Ct. 2011), SB 399.........................................48, 49

*California Chamber of Commerce v. Council for Education and
Research on Toxics*,
29 F.4th 468 (9th Cir. 2022) .....................................................................17

*California Teachers Ass'n v. State Bd. of Educ.*,
    271 F.3d 1141 (9th Cir. 2001) ................................................................51

*California Trucking Ass'n v. Bonta*,
    996 F.3d 644 (9th Cir. 2021) ...........................................................30, 31

*Carey v. Brown*,
    447 U.S. 455 (1980)................................................................................34

*Chamber of Com. of U.S. v. Lockyer*,
    364 F.3d 1154 (9th Cir. 2004) ...............................................................44

*Chamber of Commerce of U.S. v. Brown*,
    554 U.S. 60 (2008)..................................................................................42

*Chipotle Services LLC*,
    364 NLRB 980 (2016) ............................................................................47

*Clark v. City of Seattle*,
    899 F.3d 802 (9th Cir. 2018) .................................................................21

*Club Madonna Inc. v. City of Miami Beach*,
    42 F.4th 1231 (11th Cir. 2022) ..............................................................43

*Cohen v. California*,
    403 U.S. 15 (1971)...........................................................................36, 38

*Consolidated Edison Co. of New York, Inc. v. Public Service
    Commission of New York*,
    447 U.S. 530 (1980)................................................................................32

*Doe v. City of Alburquerque*,
    667 F.3d 1111 (10th Cir. 2012) ..............................................................43

*Dwinell, LLC v. McCullough*,
    Case No. 2:23-cv-10029-SB-KES, 2025 WL 2231029 (C.D. Cal.
    Apr. 7, 2025) ...........................................................................................22

*Eastex, Inc. v. NLRB*,
    437 U.S. 556 (1978)................................................................................46

*Ellwest Stereo Theatres, Inc. v. Wenner*,
    681 F.2d 1243 (9th Cir. 1982) ...............................................................35

*First Nat'l Bank of Boston v. Bellotti*,
435 U.S. 765 (1978).................................................................24

*Foothills Christian Ministries v. Johnson*,
148 F.4th 1040 (9th Cir. 2025) ................................................30

*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*,
561 U.S. 477 (2010)................................................................28

*Honeyfund.com, Inc. v. Governor*,
94 F.4th 1272 (11th Cir. 2024) ...............................33, 34, 38

*Interpipe Contracting, Inc. v. Becerra*,
898 F.3d 879 (9th Cir. 2018) ..................................................44

*Katz v. United States*,
389 U.S. 347 (1967)................................................................39

*Kivett v. Flagstar Bank, FSB*,
154 F.4th 640 (9th Cir. 2025) .................................................17

*LA All. for Hum. Rts. v. County of Los Angeles*,
14 F.4th 947 (9th Cir. 2021) ..................................................17

*Lehman v. City of Shaker Heights*,
418 U.S. 298 (1974)................................................................37

*Lodge 76, Intern. Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Wisconsin*,
427 U.S. 132 (1976)................................................................42

*Lozano v. City of Hazleton*,
724 F.3d 297 (3d Cir. 2013) ...................................................43

*LSO, Ltd. v. Stroh*,
205 F.3d 1146 (9th Cir. 2000) ..........................................30, 31

*Michigan State Employees Association*,
364 NLRB 837 (2016) ............................................................46

*Montana Medical Association v. Knudsen*,
119 F.4th 618 (9th Cir. 2024) (McKeown, J., concurring) ...............43

5

*NetChoice, LLC v. Bonta*,
  152 F.4th 1002 (9th Cir. 2025) ...............................................................33, 34

*NLRB v. Gissel Packing Co.*,
  395 U.S. 575 (1969)...............................................................................24

*Northwest Assn. of Independent Schools v. Labrador*,
  776 F. Supp. 3d 837 (D. Idaho 2025) .......................................................22, 25

*Peace Ranch, LLC v. Bonta*,
  93 F.4th 482 (9th Cir. 2024) ................................................................*passim*

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
  460 U.S. 37 (1983)................................................................................32

*Puente Arizona v. Arpaio*,
  821 F.3d 1098 (9th Cir. 2016) .................................................................43, 47, 48

*Raleys and Independent Drug Clerks Association Raleys*,
  348 NLRB 382 (2006) ............................................................................46

*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015)...............................................................................33, 34

*Rowan v. Post Office Dept.*,
  397 U.S. 728 (1970)...............................................................................37

*Sam Francis Found. v. Christies, Inc.*,
  784 F.3d 1320 (9th Cir. 2015) .................................................................48

*San Diego Bldg. Trades Council v. Garmon*,
  359 U.S. 236 (1959)...............................................................................42, 48

*Santa Barbara Sch. Dist. v. Superior Court*,
  530 P.2d 605 (Cal. Sup. Ct. 1975)............................................................50, 51

*Siren Retail Corporation*,
  373 NLRB No. 140, slip op. (2024) ..........................................................46

*Starkey v. County of San Diego*,
  346 Fed. App'x 146 (9th Cir. 2009) ..........................................................24

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014)..................................................................*passim*

*Synder v. Phelps,*
    562 U.S. 443 (2011)................................................................36

*Thomas v. Anchorage Equal Rights Commission,*
    220 F.3d 1134 (9th Cir. 2000) (en banc) .....................................*passim*

*Tingley v. Ferguson,*
    47 F.4th 1055 (9th Cir. 2022) .........................................21, 29, 30, 31

*Turner Broadcasting System, Inc. v. FCC,*
    512 U.S. 622 (1994)................................................................40

*Turner Broadcasting System, Inc. v. FCC,*
    520 U.S. 180 (1997) (*Turner II*) ................................................40

*U.S. v. Arizona,*
    641 F.3d 339 (9th Cir. 2011), *aff'd in part, rev'd in part*, 567 U.S.
    387 (2012)...........................................................................43

*Unified Data Serv., LLC v. FTC,*
    39 F.4th 1200 (9th Cir. 2022) ....................................................21

*United States v. Manning,*
    527 F.3d 828 (9th Cir. 2008) ................................................50, 51

*United States v. Salerno,*
    481 U.S. 739 (1987).......................................................42, 43, 44, 45

*United States v. Taketa,*
    923 F.2d 665 (9th Cir. 1991) .....................................................38

*Wash. State Grange v. Wash. State Republican Party,*
    552 U.S. 442 (2008)................................................................47

**Statutes**

29 U.S.C. § 157................................................................14, 45

29 U.S.C. § 158(c) .............................................................14, 24

Cal. Lab. Code § 1137(i)..................................................................................49

Cal. Lab. Code § 1137(b)(1) ...........................................................................50

Cal. Lab. Code § 1137(c) ................................................................15, 26, 34

California Labor Code § 1137 ............................................................................9

Federal Immigration Reform and Control Act .....................................................47

National Labor Relations Act ....................................................................*passim*

NLRA Section 7....................................................................................45, 46, 50

NLRA Section 8(c) ............................................................................................44

SB 399 ....................................................................................................*passim*

**Other Authorities**

First Amendment...................................................................................*passim*

Fourth Amendment ......................................................................................38, 39

Rule 28—2.7 Addendum ...................................................................................14

Rule 28-2.2......................................................................................................12

Senate Bill 399 ...............................................................................................9, 40

## **INTRODUCTION**

The subject litigation pertains to a state's power to regulate employer speech and, more specifically, the laws that limit such power. The instant appeal involves Senate Bill 399, codified at California Labor Code § 1137 ("SB 399"), and its undeniable primary purpose and effect of improperly limiting employer speech including, but not limited to: 1) political speech relating to proposed and existing laws, legislation and regulations; and 2) speech relating to union organization such as "captive audience" meetings—meetings at which employers commonly exercise their legal right to educate employees about unions and unionization. SB 399 is a blatant attack on employer free speech rights and a clear intrusion into an area of labor relations that has long been the province of the National Labor Relations Board ("NLRB").

Appellees California Chamber of Commerce, California Restaurant Association, and Western Growers Association (collectively, "Challengers") brought this action on behalf of their employer members who are directly and inescapably impacted by SB 399. They principally argued below that the law violates the First Amendment and is preempted by the National Labor Relations Act ("NLRA"). The district court agreed and issued a preliminary injunction enjoining its enforcement.

9

On appeal, Appellants Division of Labor Standards Enforcement of the California Department of Industrial Relations, California Labor Commissioner Lilia Garcia-Brower, and California Attorney General Robert Bonta (collectively, "Defendants") argue, for the first time, that Challengers lack Article III standing to assert a pre-enforcement challenge to SB 399. The district court properly rejected this same argument raised by Amici Curiae below.

Defendants next argue on appeal, as they did below, that SB 399 is a permissible restriction on employer conduct, not speech, and therefore is not subject to a strict scrutiny analysis. As the district court correctly recognized, however, a state cannot regulate conduct as a mere smokescreen for regulating speech, and that is precisely what SB 399 does. The plethora of precedent finding that when the conduct regulated depends on—and cannot be separated from—the ideas communicated, a law is functionally a regulation of speech which is fatal to Defendants' arguments. SB 399 is not about conduct, nor is it just limited to how employers conduct themselves in meetings. As evidenced by its title in the legislative record being ""Employer Communications: Intimidation," the central purpose of SB 399 is to impermissibly regulate, limit and control an employer's ability to speak and communicate with its employees on a broad subject of topics. Thus, the district court did not err in applying strict scrutiny to find that SB 399 violates the First Amendment.

10

Finally, Defendants effectively concede on appeal that the district court correctly determined SB 399 was preempted by the NLRA. They maintain, however, that the district court nevertheless erred in finding SB 399 facially preempted because it has applications that do not implicate the NLRA. In other words, Defendants suggest the district court should have limited its injunction to employers and employees not covered by the NLRA. Relevant precedent, finding that severability of the statute is not permissible, directly undermines the arguments proffered by Defendants.

11

## **STATEMENT OF JURISDICTION**

Challengers agree with Defendants' Statement of Jurisdiction. *See* Circuit Rule 28-2.2.

**STATEMENT OF ISSUES**

1.      Whether the district court properly found that Challengers have Article III standing to assert a pre-enforcement challenge to SB 399 where their employer members have engaged in, and intend to continue engaging in, speech expressly proscribed by the statute, and there is a credible threat the statute will be enforced against them.

2.      Whether the district court properly found that Challengers established a likelihood of success on the merits of their claim that SB 399 violates the First Amendment under a strict scrutiny analysis where the statute's ostensible regulation of conduct is a mere smokescreen for regulating speech.

3.      Whether the district court properly found that Challengers established a likelihood of success on the merits of their claim that SB 399 is facially preempted by the NLRA where no set of circumstances exists under which the statute would be valid and where severability is not appropriate under applicable law.

13

## STATEMENT OF ADDENDUM

Except for the following, all applicable constitutional provisions and statutes are contained in Circuit Rule 28—2.7 Addendum to Defendants' Opening Brief on the Merits:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

29 U.S.C. § 157.

> **Expression of views without threat of reprisal or force or promise of benefit** The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit.

29 U.S.C. § 158(c).

14

**STATEMENT OF THE CASE**

SB 399 broadly prohibits an employer from taking or threatening to take adverse action against an employee who "declines to attend an employer-sponsored meeting or affirmatively declines to participate in, receive, or listen to any communications with the employer . . . the purpose of which is to communicate the employer's opinion about religious or political matters." Cal. Lab. Code § 1137(c). Political matters are defined as matters "relating to elections for political office, political parties, legislation, regulation and the decision to join or support any political party or legal organization." Notably, SB 399 limits and regulates speech pertaining to, for example, pending legislation before a legislative body and/or recently enacted legislation that an employer may want to speak about. Moreover, because SB 399 expressly defines "political matters" as including "the decision to join or support any . . . labor organization," *id.* at § 1137(b)(3), it effectively prohibits employers from requiring employees to attend "captive audience" meetings at which employers commonly exercise their legal right to educate employees about unions and unionization.

Challengers are statewide trade associations whose employer members operate in California and communicate with employees concerning political matters as defined by SB 399. ER-178, 181-82. Challengers filed an amended complaint against Defendants in the United States District Court for the Eastern

15

District of California on February 7, 2025, seeking a judgment declaring that SB 399 is unconstitutional and preempted by the NLRA and enjoining Defendants from enforcing it. ER-176-91.

On February 14, 2025, Challengers moved for a preliminary injunction, which the district court granted on September 30, 2025. ER-4-38. The district court concluded that Challengers have standing to challenge SB 399 and that Challengers are likely to succeed on the merits of their claims that SB 399 violates the First Amendment and is preempted by the NLRA. This appeal followed.

## STANDARD OF REVIEW

This Court reviews a district court's decision to grant a preliminary injunction for "abuse of discretion," but the district court's "interpretation of the underlying legal principles . . . is subject to de novo review." *California Chamber of Commerce v. Council for Education and Research on Toxics*, 29 F.4th 468, 475 (9th Cir. 2022) (quoting *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2002) (en banc)); *LA All. for Hum. Rts. v. County of Los Angeles*, 14 F.4th 947, 956 (9th Cir. 2021) ("We review de novo issues of law underlying the preliminary injunction, including questions of jurisdiction . . . . Standing is a threshold matter of jurisdiction.") (citations omitted); *Kivett v. Flagstar Bank, FSB*, 154 F.4th 640, 644 (9th Cir. 2025) ("We review *de novo* questions of . . . preemption.") (citations omitted).

## SUMMARY OF ARGUMENT

The district court's decision to preliminarily enjoin Defendants from enforcing SB 399 was legally sound and fully supported by the record. First, contrary to Defendants' understanding, the district court applied the correct legal test to determine whether Challengers have Article III standing to assert a pre-enforcement challenge to SB 399. The district court also correctly found that Challengers have standing. The Complaint and declarations, filed by Challengers in the lower court, make clear that Challengers' employer members intend to engage in speech and communications arguably affected with a constitutional interest proscribed by SB 399—*i.e.*, free speech protected by the First Amendment and the NLRA—and that a credible threat of prosecution exists.

Second, the district court correctly found that Challengers established a likelihood of success on the merits of their claim that SB 399 violates the First Amendment under a strict scrutiny analysis. Defendants do not dispute that SB 399 fails the strict scrutiny test. Instead, they argue strict scrutiny does not apply because SB 399 regulates only conduct, not speech. Defendants' theory is flawed, and the district court correctly rejected it. A state cannot regulate conduct as a mere smokescreen for regulating speech, yet that is precisely what SB 399 does. In any event, SB 399 fails under less demanding scrutiny as well.

18

Finally, the district court correctly found that Challengers established a likelihood of success on the merits of their claim that SB 399 is preempted by the NLRA. Critically, Defendants fail even to contest the district court's application of settled preemption principles to SB 399; rather, they contend the district court erroneously determined that SB 399 was facially preempted because there are arguable hypothetical circumstances under which SB 399 does not implicate the NLRA. Defendants' arguments are not supported by federal preemption precedent and, in any event, are irrelevant given that severability of the statute is not appropriate under applicable state law.

## ARGUMENT

### I.    STANDING

Defendants first contest the district court's finding that Challengers have Article III standing to assert a pre-enforcement challenge to SB 399. Defendants' Opening Brief on the Merits ("Defs.' Br.") 13-18. Defendants argue the district court applied the wrong legal test to determine pre-enforcement standing, and, under the correct test, Challengers failed to satisfy their burden. Defendants misunderstand the law and misread the district court's decision.  In short, it does not matter what test is utilized by this Court, Challengers have standing to both bring the complaint and obtain the preliminary injunction.

### A.    The District Court Applied the Correct Legal Test to Determine Pre-Enforcement Standing.

Defendants argue the district court erroneously applied the "obsolete" multifactor test set forth in *Thomas v. Anchorage Equal Rights Commission*, 220 F.3d 1134 (9th Cir. 2000) (en banc), rather than the three-prong test drawn from *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), which, Defendants maintain, the Ninth Circuit "now uses" to determine pre-enforcement standing. Defs.' Br. 16.[1] Contrary to Defendants' understanding, *Thomas* is not "obsolete"—

---

[1] The *Thomas* factors are (1) whether the plaintiff has a concrete plan to violate the law; (2) whether the enforcement authorities have communicated a

the Ninth Circuit continues to apply it "[t]o determine whether a genuine threat of imminent prosecution exists" under *Driehaus*. *Clark v. City of Seattle*, 899 F.3d 802, 813 (9th Cir. 2018); *see also Tingley v. Ferguson*, 47 F.4th 1055, 1067 (9th Cir. 2022) (recognizing that "*Driehaus* set the general standard for pre-enforcement standing" but "rely[ing] on [the] three-factor [*Thomas*] inquiry to help determine whether a threat of enforcement is genuine enough to confer an Article III injury"); *Arizona v. Yellen*, 34 F.4th 841, 850 (9th Cir. 2022) (applying *Thomas* factors to evaluate "[t]he third *Driehaus* factor").

In fact, the Ninth Circuit has rejected the precise argument made by Defendants here, expressly declining to abrogate *Thomas* while continuing to adhere to the *Driehaus* framework. *See Unified Data Serv., LLC v. FTC*, 39 F.4th 1200, 1210 n.9 (9th Cir. 2022) ("Plaintiffs suggest that the Supreme Court's decision in [*Driehaus*] abrogated the Ninth Circuit's three-part test [in *Thomas*].

---

specific warning or threat to initiate proceedings; and (3) whether there is a history of past prosecution or enforcement. *Thomas*, 220 F.3d at 1139. The *Driehaus* framework examines whether the plaintiff has "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Driehaus*, 573 U.S. at 159 (citation omitted). "[T]he essence" of the *Thomas* factors, the Ninth Circuit has observed, is "partially incorporated in *Driehaus*'s framework." *American Encore v. Fontes*, 152 F.4th 1097, 1114 n.8 (9th Cir. 2025); *see also Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 487 (9th Cir. 2024) (adopting *Driehaus* framework but acknowledging it "incorporate[s] part of the essence of the [*Thomas*] test").

Not so. We have continued to apply this test after [*Driehaus*] as a means of determining whether a purported injury meets the Supreme Court's 'credible threat' requirement.") (citing *Clark*, 899 F.3d at 813).[2]

Consistent with the above precedent, the district court properly cited *Driehaus* for the general pre-enforcement injury framework while acknowledging that "[t]he Ninth Circuit typically relies on a three-factor inquiry (the *Thomas* factors) to determine whether a threat of enforcement is genuine enough to confer Article III injury." ER-10. As explained below, the court correctly applied the tests to find that Challengers "adequately stated an injury in fact for purposes of a pre-enforcement injury." ER-10.

---

[2] District courts with the Ninth Circuit have also recognized as much. *See, e.g.*, *Northwest Assn. of Independent Schools v. Labrador*, 776 F. Supp. 3d 837, 854 (D. Idaho 2025) (recognizing that "[t]he two tests [in *Thomas* and *Driehaus*] are not mutually exclusive"); *Dwinell, LLC v. McCullough*, Case No. 2:23-cv-10029-SB-KES, 2025 WL 2231029, at *4 (C.D. Cal. Apr. 7, 2025) ("*Peace Ranch* . . . did not 'reexamine' *Thomas*. Nor did it find *Thomas* clearly irreconcilable with *Driehaus*. *Peace Ranch* and *Thomas* appear to be two articulations of the same standard, rather than wholly distinct tests.").

**B.** **The District Court Correctly Found that Challengers Have Pre-Enforcement Standing Under the Applicable Legal Test.**

    **1.** **Challengers' employer members intend to engage in a course of conduct arguably affected with a constitutional interest.**

Under *Driehaus*, a plaintiff must first show "an intention to engage in a course of conduct arguably affected with a constitutional interest . . . ." 573 U.S. at 161. "Importantly, a plaintiff need not plan to break the law." *Peace Ranch*, 93 F.4th at 488. "The concept of 'intention' is more counterfactual than practical. That is to say, courts must ask whether the plaintiff would have the intention to engage in the proscribed conduct, were it not proscribed." *Id.* The district court correctly found that Challengers satisfied their burden here.[3]

The complaint alleges that Challengers' employer members have engaged in, and intend to continue engaging in, conduct arguably affected with a constitutional interest, including "employer sponsored meetings, speech, or other communications having the primary purpose of communicating the employer's opinion concerning political matters as defined in [SB 399] . . ." ER-181-82. The declarations submitted by Challengers in support of the complaint likewise aver that Challengers' employer members hold meetings to discuss with their respective

---

[3] Defendants do not appear to contest this finding; rather, as discussed further below, their principal focus is on the second and third *Driehaus* factors.

23

employees subjects encompassed by SB 399, such as "labor issues and other 'political matters[,]' including proposed legislation, administrative regulations, and court decisions." ER-164, ¶ 6; ER-168-69, ¶ 5; ER-174, ¶ 6.

In short, Challengers' employer members practice free speech, which, of course, "is at the heart of the First Amendment's protection." *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 776 (1978); *Starkey v. County of San Diego*, 346 Fed. App'x 146, 148 (9th Cir. 2009) ("[S]tate action that is merely a 'facade for viewpoint-based discrimination' goes to the heart of the First Amendment's protection of free speech.") (quoting *Corneilius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 811 (1985)). Moreover, the NLRA expressly protects employers' right to engage in free speech, *see* 29 U.S.C. § 158(c) ("The expressing of any views, argument, or opinion . . . shall not constitute or be evidence of an unfair labor practice . . . if such expression contains no threat of reprisal or force or promise of benefit."), and the Supreme Court has long acknowledged as much, *see NLRB v. Gissel Packing Co.*, 395 U.S. 575, 617 (1969) (observing that "an employer's free speech right to communicate his views to his employees is firmly established" and that "8(c) merely implements the First Amendment . . .").

Challengers, therefore, intend to engage in "conduct arguably affected with a constitutional interest"—*i.e.*, free speech—as contemplated by *Driehaus* and its progeny. *See Driehaus*, 573 U.S. at 162 ("Because petitioners' intended future

24

conduct concerns political speech, it is certainly affected with a constitutional interest.") (internal quotations and citations omitted); *American Encore*, 152 F.4th at 1116 (finding plaintiffs "have sufficiently shown that they intend to engage in a course of conduct arguably affected by a constitutional interest—namely, political and election-related speech").

### 2. Challengers' employer members' intended conduct is arguably proscribed by SB 399.

Next, under *Driehaus*, a plaintiff must show its intended course of conduct is "arguably proscribed" by the challenged statute. 573 U.S. at 162. For purposes of this element (and standing in general), the court must accept the plaintiff's interpretation of the statute "so long as it is an arguable interpretation." *American Encore*, 152 F.4th at 1116 (citing *Yellen*, 34 F.4th at 850); *Peace Ranch*, 93 F.4th at 489 (deferring to plaintiff's "plausible" allegations concerning potential application of challenged law to avoid "an inquiry that seems to unavoidably tangle standing with the merits"); *see also Northwest Assn.*, 776 F. Supp. 3d at 855 ("[A]t this stage of the inquiry courts are deferential to a plaintiff's allegations when further scrutiny risks mixing a standing analysis with the merits of the complaint."). The district court correctly found that Challengers satisfied their burden here as well.

As explained above, the Complaint alleges that Challengers' employer members have engaged in, and intend to continue engaging in, speech on "political

matters" as defined by SB 399. The speech ranges from verbal and written communications, discussing relevant "political matters" to "employer sponsored meetings." ER-181-82. SB 399 plainly prohibits employers from, *inter alia*, making such communications on its opinions, but prohibiting mandatory meetings at which these communications would be made. *See* Cal. Lab. Code § 1137(c) ("An employer . . . shall not subject, or threaten to subject, an employee to discharge, discrimination, retaliation, or any other adverse action because the employee declines to attend an employer-sponsored meeting . . . the purpose of which is to communicate the employer's opinion about . . . political matters."). Thus, the district court properly concluded that the Complaint "indicate[s] that [Challengers'] membership seeks to engage in the types of communications that it fears are proscribed under SB 399." ER-10.

Defendants disagree, arguing the Complaint and declarations are insufficient to establish that Challengers have the requisite intent under *Driehaus* because they do not state that Challengers' employer members wish to "punish or retaliate" against employees who refuse to attend meetings. Defs.' Br. 15-16. Defendants relatedly argue it is "impossible" for the district court to have concluded that Challengers established standing under *Driehaus* given the court's separate acknowledgement that Challengers had not "thoroughly expressed an intent to violate SB 399." Defs.' Br. 17. Again, Defendants misunderstand the law.

26

First, Defendants read SB 399 too narrowly. In Defendants' view, an employer only violates SB 399 by actually punishing or retaliating against (*i.e.*, disciplining or discharging) an employee who chooses not to attend a meeting at which an employer communicates its opinion regarding religious or political matters. The statute, however, also proscribes *threats* to discipline or discharge, which, the Board in *Amazon.com Services LLC*, 373 NLRB No. 136 (2024), observed, may be explicit or *implicit*.[4] *See id.* at 17 ("In the captive-audience context . . . the . . . violation turns not on the substance of the employer's views, but rather on the employer's use of compulsion: the threat, whether explicit or implicit, that employees will suffer discipline, discharge, or some other adverse consequence if they fail to attend the meeting."); *id.* at 22 ("An employer's implicit or explicit statement to employees that they must attend a captive-audience meeting or face job consequences is plainly a threat of reprisal.").

Thus, merely sponsoring communications at meetings where proscribed content is discussed—which the complaint clearly alleges Challengers' employer members historically have done and intend to continue doing, *see* ER-181-82—

---

[4] In *Amazon.com*, the Board held for the first time that an employer violates the NLRA by mandating employee attendance at a meeting where it expresses its views concerning unionization. That decision is currently on appeal to the Eleventh Circuit. *See Amazon.com Services, LLC v. NLRB*, No. 23-13819.

arguably could be deemed a "threat[] to subject . . . an employee to discharge, discrimination, retaliation, or any other adverse action" for refusing to attend and, thereby, a violation of SB 399. This is plainly sufficient for Challengers to satisfy the second *Driehaus* factor. *See Peace Ranch*, 93 F.4th at 489 (a plaintiff must only show that their "future conduct . . . [is] 'arguably . . . proscribed by [the] statute' it wishes to challenge").

Second, even if an explicit adverse action against an employee or a threat thereof is a necessary predicate for an employer to violate SB 399, *Driehaus* itself makes clear that Challengers are not required to allege they intend to take such action for purposes of establishing Article III standing. *See Driehaus*, 573 U.S. at 163 ("Nothing in this Court's decisions requires a plaintiff who wishes to challenge the constitutionality of a law to confess that he will in fact violate that law."); *see also Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 490 (2010) ("We normally do not require plaintiffs to 'bet the farm . . . by taking the violative action' before 'testing the validity of the law . . . .'") (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007)).

Indeed, pre-enforcement standing exists precisely so "a plaintiff need not 'first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute.'" *Babbitt v. Farm Workers*, 442 U.S. 289, 302 (1979) (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)). Accordingly, it is immaterial whether

28

Challengers allege their employer members intend to "violate the law" by "punishing or retaliating" against employees who refuse to attend meetings or otherwise listen to proscribed speech.

### 3. Challengers' employer members risk a credible threat of prosecution.

The final *Driehaus* factor requires a plaintiff to show it faces "a credible threat of prosecution" under the challenged statute. 573 U.S. at 159. As explained above, this is where the *Thomas* factors come into play. *See Tingley*, 47 F.4th at 1067 ("We rely on a three-factor inquiry to help determine whether a threat of enforcement is genuine enough to confer an Article III injury.") (citing *Thomas*, 220 F.3d at 1139). The district court correctly found that Challengers made this showing.

First, Challengers have a "concrete plan" to violate SB 399, as articulated above in connection with the overlapping *Driehaus* "intent" factor. *See Yellen*, 34 F.4th at 850 (intent to engage in conduct arguably proscribed by statute satisfies "concrete plan" element); *Tingley*, 47 F.4th at 1068 (same). Again, Challengers' employer members intend to sponsor meetings and engage in communications in which proscribed content will be discussed, and it is irrelevant whether they intend to discipline or discharge employees for failing to attend or receive those communications.

29

Second, although Defendants have not expressly communicated a specific warning or threat to initiate proceedings, their failure to disavow enforcement is sufficient to satisfy the second *Thomas* factor. *See Foothills Christian Ministries v. Johnson*, 148 F.4th 1040, 1050 (9th Cir. 2025) ("When a plaintiff 'challeng[es] a new law whose history of enforcement is negligible or nonexistent, either a general warning of enforcement *or a failure to disavow enforcement* is sufficient to establish a credible threat of prosecution.'") (emphasis added) (citing *Matsumoto v. Labrador*, 122 F.4th 787, 797-98 (9th Cir. 2024)); *Tingley*, 47 F.4th at 1068 ("Washington has not issued a warning or threat of enforcement to Tingley. We have, however, interpreted the government's failure to *disavow* enforcement of the law as weighing in favor of standing.") (citation omitted); *California Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021) ("[T]he state's refusal to disavow the enforcement of [the challenged law] against motor carriers during this litigation is strong evidence that the state intends to enforce the law and that [plaintiffs] face a credible threat [of enforcement].").

Additionally, the alleged chilling effect imposed by SB 399 on Challengers' employer members' speech, *see* ER-178, ¶ 3, ER-186, ¶ 45, demonstrates their concern over enforcement efforts. *See Tingley*, 47 F.4th at 1068 ("Washington's general warning of enforcement coupled with Tingley's self-censorship in the face of the law satisfy the second prong of the *Thomas* inquiry for standing."); *LSO,*

30

*Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000) ("[T]he tendency to find standing absent actual, impending enforcement against the plaintiff is stronger in First Amendment cases . . . .") (internal quotations and citations omitted).

Defendants therefore are clearly wrong in suggesting that the district court erroneously relied on (1) their failure to disclaim a willingness to enforce SB 399, and (2) Challengers' allegations that its members' speech has been chilled. *See* Defs.' Br. 17 ("Nor does the fact that [Defendants] have not disclaimed a willingness to enforce SB 399 or that [Challengers] allege their members' speech is chilled support the lower court's conclusion.").

Finally, where, as here, "the challenged law is relatively new and the record contains little information as to enforcement or interpretation," the "history of past enforcement" factor has "little weight." *California Trucking*, 996 F.3d at 653 (quoting *Wolfson v. Brammer*, 616 F.3d 1045, 1060 (9th Cir. 2010)). Accordingly, the district court rightly discounted this factor, and Defendants do not suggest otherwise. *See* ER-11 ("The final factor regarding the enforcement of history is not dispositive one way or another, as the statute became effective on January 1, 2025.") (citing *Tingley*, 47 F.4th at 1069).

In sum, the district court applied the correct legal test to determine whether Challengers have standing to assert a pre-enforcement challenge to SB 399, and the district court correctly found that they do.

31

## II.     FIRST AMENDMENT

Defendants next contest the district court's finding that Challengers have shown a likelihood of success on the merits of their claim that SB 399 violates the First Amendment. Defs.' Br. 18-30. Defendants' entire argument is premised on the level of scrutiny applied to SB 399 by the district court. In Defendants' view, the court wrongly applied strict scrutiny, under which a law is deemed constitutional only if it is "necessary to serve a compelling state interest" and "is narrowly drawn to achieve that end." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983).[5] Defendants essentially recycle for this Court the same flawed arguments they advanced below, all of which were properly rejected by the district court.[6]

---

[5] Notably, Defendants do not challenge the district court's determination that SB 399 fails to survive strict scrutiny if it applies, *see* ER-35-36, and thus, effectively concede the point.

[6] The district court rejected Challengers' argument that SB 399 was "viewpoint discriminatory." ER-30-31. The court's determination in that regard is immaterial, however, given its conclusion that SB 399 is nevertheless "subject-matter based." ER-31. *See Consolidated Edison Co. of New York, Inc. v. Public Service Commission of New York*, 447 U.S. 530, 537 (1980) ("The First Amendment's hostility to content-based regulation extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic."). Likewise, the district court's failure to address Challengers' argument that SB 399 is unconstitutionally vague is irrelevant given the court's invalidation of the statute on other grounds.

### A. The District Court Properly Rejected Defendants' Conduct-Not-Speech Theory.

"Laws that regulate speech based on its content are presumptively unconstitutional and subject to strict scrutiny." *NetChoice, LLC v. Bonta*, 152 F.4th 1002, 1015 (9th Cir. 2025) (citing *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)). Defendants do not dispute this core principle. Instead, they argue, SB 399 regulates conduct, not speech, and therefore strict scrutiny does not apply. *See* Defs.' Br. 21 ("On its face, SB 399 does not regulate speech.").

Specifically, Defendants claim SB 399 does not warrant strict scrutiny because it does not prohibit an employer from expressing its opinion on any subject, including religious and political matters; rather, it only prohibits an employer from compelling employees to listen. Defs.' Br. 21-23. In other words, Defendants posit, SB 399 only affects what employers must not *do*—punish or retaliate—not what they may or may not *say*. Defs.' Br. 23. But as the district court correctly understood, "regulation of conduct may not be done as a 'smokescreen' for regulating speech." ER-27 (quoting *Honeyfund.com, Inc. v. Governor*, 94 F.4th 1272, 1278 (11th Cir. 2024) (citing *R.A.V. v. City of St. Paul*, 505 U.S. 377, 385 (1992)). And that is precisely what SB 399 does.

Although SB 399 ostensibly only prohibits employers from taking or threatening to take adverse action against employees, the law "cannot be justified without reference to the content of the regulated speech[,]" and thus, "like those

33

[laws] that are content based on their face, must also satisfy strict scrutiny." *Reed*, 576 U.S. at 164 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)); *see also Carey v. Brown*, 447 U.S. 455, 461 (1980) (finding Illinois law prohibiting all residential picketing except "peaceful labor picketing" was a content-based speech restriction because the statute's reach depended "solely on the nature of the message being conveyed"); *NetChoice*, 152 F.4th at 1015 ("If a law's applicability turns on 'the topic discussed' or 'the idea or message expressed,' the law is 'obvious[ly] content based.") (quoting *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 69 (2022)).

To be sure, an employer does not violate SB 399 by taking adverse action against an employee for refusing to attend *any* meeting or participate in, receive, or listen to *any* communication—an employer only violates SB 399 by doing so where the subject of the meeting or communication is the employer's "opinion about religious or political matters." Cal. Lab. Code § 1137(c). As the district court aptly observed, "a decision maker would necessarily have to consider the content of the employer's speech to determine whether taking the adverse employment action was appropriate." ER-28. *See Honeyfund.com*, 94 F.4th at 1278 ("When the conduct regulated depends on—and cannot be separated from—the ideas communicated, a law is functionally a regulation of speech. And that means we

34

treat it just like any other content-based speech restriction under the First Amendment.") (citations omitted);

SB 399 is therefore subject to strict scrutiny notwithstanding that it facially regulates only an employer's ability to take adverse action against an employee for refusing to listen to speech rather than the speech itself. *Compare Bates v. Pakseresht*, 146 F.4th 772, 787 (9th Cir. 2025) (finding Oregon rule requiring prospective adoptive parents to respect, accept, and support children's sexual orientation, gender identity, and gender expression subject to First Amendment strict scrutiny despite government's contention it only regulated speech incidental to conduct), *with Ellwest Stereo Theatres, Inc. v. Wenner*, 681 F.2d 1243, 1245 (9th Cir. 1982) (noting owner of adult movie arcade "does not nor could it successfully contend" that city ordinance requiring all coin operated viewing devices to be visible from a continuous main aisle "regulates speech on the basis of content" where "[t]he ordinance does not prohibit the showing of any film whatever[]" and owner "may still exhibit any film it wishes . . .").

### B. The District Court Properly Rejected Defendants' Attempt to Analogize SB 399 to Anti-Discrimination and Anti-Retaliation Laws.

Defendants next argue here, as they did below, that SB 399 is analogous to federal and state anti-discrimination and anti-retaliation laws, which are facially valid despite having an incidental impact on speech. Defs.' Br. 21-24. As the

district court correctly pointed out, however, even Title VII "is not immune from the demands of the First Amendment where expressive conduct is targeted." ER-29 (citing *Rodriguez v. Maricopa Cnty. Cmty. Coll.*, 605 F.3d 703, 710 (9th Cir. 2010) ("Harassment law generally targets conduct, and it sweeps in speech as harassment only when consistent with the First Amendment.")).

Moreover, the district court explained, unlike SB 399, some of Title VII's reach into expressive conduct is justifiable as a means for victims to prove unlawful conduct and to serve a "compelling state interest in preventing discrimination on the basis of protected characteristics like race and gender." ER-29. Thus, the court concluded, "the notion that SB 399 regulates conduct just like Title VII and thus is exempt from First Amendment scrutiny is an overstatement of the law, and an incorrect analogy." ER-30.

**C.** **The District Court Properly Rejected Defendants' "Captive-Audience" Theory.**

Finally, the district court properly rejected Defendants' reliance on the "captive audience doctrine," which the Supreme Court has applied "only sparingly to protect unwilling listeners from protected speech." *Synder v. Phelps*, 562 U.S. 443, 459 (2011). For the doctrine to apply, there must be a "showing that substantial privacy interests are being invaded in an essentially intolerable manner." *Cohen v. California*, 403 U.S. 15, 21 (1971). As the district court explained, "This narrow application stems from the principle that 'the Constitution

does not permit government to decide which types of otherwise protected speech are sufficiently offensive to require protection for the unwilling listener or viewer[,]' because 'the burden normally falls upon the viewer to avoid further bombardment of [his] sensibilities simply by averting [his] eyes." ER-32 (quoting *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 210-11 (1975)).

The district court correctly concluded that employees in the workplace do not have the same "substantial privacy interests" as the individuals at issue in the cases in which the Supreme Court has "sparingly" applied the captive audience doctrine to justify reduced scrutiny of speech restrictions. *See, e.g.*, *Rowan v. Post Office Dept.*, 397 U.S. 728 (1970) (residents in their home); *Madsen v. Women's Health Ctr.*, 512 U.S. 753 (1994) (patients in a hospital setting); *Lehman v. City of Shaker Heights*, 418 U.S. 298 (1974) (public transit riders); *Bethel School Dist. No. 403 v. Fraser*, 478 U.S. 675 (1986) (students at a school assembly). In fact, Defendants failed to even articulate such a privacy interest, which the district court found was "detrimental to its claim." ER-34. Defendants' belated attempt to do so now falls flat.

According to Defendants, "[j]ust like public transit riders, patients, and students, employees are a 'captive audience' in the workplace." Defs.' Br. 28. Indeed, Defendants' claim in conclusory fashion, "an employee has just as much, if not more, of a privacy interest in avoiding unwanted speech in the workplace as a

37

commuter does while riding a bus or a student does while attending a lecture . . . ." Defs.' Br. 29.[7] Defendants' conclusory arguments are unpersuasive.

In *Honeyfund.com*, the Eleventh Circuit recently rejected a similar argument that Florida's prohibition on certain mandatory workplace meetings was defensible under the "captive audience" theory. The Court noted the theory "has historically been entertained only when the speaker intrudes on the privacy of the home or the degree of captivity makes it impractical for the unwilling viewer or auditor to avoid exposure." 94 F.4th at 1281 n.5 (quoting *Erznoznik*, 422 U.S. at 209). "Outside of that context," the Court observed, "the government cannot decide to ban speech that it dislikes because this would 'effectively empower a majority to silence dissidents simply as a matter of personal predilections.'" *Id.* (quoting *Cohen*, 403 U.S. at 21).

Defendants' reliance on *United States v. Taketa*, 923 F.2d 665 (9th Cir. 1991), as recognizing a right of privacy in the workplace does not save its argument. *Taketa* arose in the Fourth Amendment context. At issue was whether two drug enforcement agents had a reasonable expectation of privacy against a warrantless search and seizure of one of the agents' government office. The Ninth

---

[7] Notably, Defendants' focus on "unwanted speech" here undermines their primary theory that SB 399 is aimed only at conduct.

Circuit explained that "[a] valid fourth amendment claim requires a subjective expectation of privacy that is objectively reasonable." *Id.* at 670-71 (citing *Smith v. Maryland*, 442 U.S. 735 (1979), and *Katz v. United States*, 389 U.S. 347 (1967)). Based on the facts presented, the Ninth Circuit concluded that the agent whose office was searched had a reasonable expectation of privacy, while the other agent did not, drawing the distinction based on which agent had been assigned the office. *Id.* at 671 ("In the employment context, we have found a reasonable expectation of privacy to exist in an area 'given over to [an employee's] exclusive use.'") (quoting *Schowengerdt v. General Dynamics Corp.*, 823 F.2d 1328, 1335 (9th Cir. 1987)).

Here, of course, no Fourth Amendment concerns are implicated. There is no "objectively reasonable," "subjective expectation" of privacy against employer speech like there may be against an employer's search of an employee's locker or vehicle. Indeed, the Supreme Court has acknowledged that the Fourth Amendment "cannot be translated into a general constitutional right of privacy" given that "its protections go further, and often have nothing to do with privacy at all." *Katz*, 389 U.S. at 350 ("[The Fourth] Amendment protects individual privacy against certain kinds of governmental intrusion, but its protections go further, and often have nothing to do with privacy at all.").

39

**D.** **SB 399 Fails Even Under Intermediate Scrutiny.**

Assuming *arguendo* that the district court erred in applying strict scrutiny to SB 399, the statute nevertheless fails to pass constitutional muster. Content-neutral laws "are subject to an intermediate level of scrutiny because in most cases they pose a less substantial risk of excising certain ideas or viewpoints from the public dialogue." *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 642 (1994) (citation omitted). Under that standard, a law will survive review "if it advances important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests." *Turner Broadcasting System, Inc. v. FCC*, 520 U.S. 180, 189 (1997) (*Turner II*). SB 399 is deficient in both respects.

First, SB 399 does not advance important governmental interests unrelated to the suppression of free speech. At most, Defendants claim SB 399 advances the government's interest in protecting employees from being compelled to listen to their employer's opinion concerning religious or political matters. *See* Defs.' Br. 5 ("SB 399 was animated by the belief that '[n]o worker should be subject to forced indoctrination by their employer on politics, religion, or for exercising their protected rights on the job.'") (citing ER-108 (April 11, 2023 Senate Committee on Labor, Public Employment and Retirement analysis of Senate Bill 399)). Even accepting Defendants' characterization of such an interest as being "important"

40

enough to survive intermediate scrutiny, the interest, by definition, is not "unrelated to the suppression of free speech."

Second, SB 399 burdens substantially more speech than necessary to further the government's purported interest. As Defendants acknowledge, "The California Legislature enacted [SB 399] in response to concerns about captive audience meetings—meetings that are unrelated to an employee's job duties but that employers require employees to attend at risk of adverse employment action." Defs.' Br. 4. But SB 399 is not limited to "captive audience" meetings, as the district court observed and the plain text confirms. ER-36. Rather, it extends to "any communications with the employer or its agents or representatives," which would suppress far more speech than necessary to protect employees from "captive audience" meetings. ER-36.

In sum, the district court appropriately applied strict scrutiny to SB 399 and correctly determined that the statute violates the First Amendment.

## III.   PREEMPTION

As a final matter, Defendants contest the district court's finding that Challengers have shown a likelihood of success on the merits of their claim that SB 399 is preempted by the NLRA. Defs.' Br. 30-34. Importantly, Defendants do

41

not take issue with the district court's basic application of *Garmon* and *Machinists* preemption principles to SB 399.[8] *See* ER-12-26. Rather, Defendants claim the district court erroneously found SB 399 was "facially preempted." Defs.' Br. 30. Defendants' arguments are not supported by applicable federal preemption precedent and, in any event, are irrelevant because the statute cannot be severed under applicable state law.

### A. The District Court Correctly Applied Federal Preemption Law.

In *United States v. Salerno*, 481 U.S. 739, 745 (1987), the Supreme Court held that a party asserting a facial challenge to a statute "must establish that no set of circumstances exists under which the [statute] would be valid." As Defendants point out, *see* Defs.' Br. 31-32, and as the district court acknowledged, *see* ER-14, the Ninth Circuit applies the *Salerno* standard when evaluating facial preemption challenges. *See American Apparel & Footwear Association, Inc.*, 107 F.4th 934, 938 (9th Cir. 2024) ("The *Salerno* rule applies to a federal preemption facial

---

[8] *Garmon* preemption arises "[w]hen an activity is arguably subject to [Section] 7 or [Section] 8 of the [NLRA] . . . ." *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1959); *Chamber of Commerce of U.S. v. Brown*, 554 U.S. 60, 65 (2008) ("*Garmon* pre-emption forbids States to 'regulate activity that the NLRA protects, prohibits, or arguably protects or prohibits.'") (quoting *Wisconsin Dept. of Industry v. Gould Inc.*, 475 U.S. 282, 286 (1986)). *Machinists* preemption arises when "Congress intended that the conduct involved be unregulated [and] left to be controlled by the free play of economic forces." *Lodge 76, Intern. Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Wisconsin*, 427 U.S. 132, 140 (1976).

challenge to a state statute.").[9] Defendants' argument that the district court misapplied the *Salerno* standard is grounded in faulty reasoning. Defs.' Br. 34.

First, the district court's unchallenged determination that SB 399 is subject to *Machinists* preemption squarely forecloses Defendants' opposition to a facial challenge. In *Chamber of Commerce of the United States v. Lockyer*, this Court explained that "[w]here a party makes a facial *Machinists* preemption challenge to a statute that directly targets a process established by the NLRA . . . the question is not whether the application of a state statute to a single set of facts is permissible, but whether the state has acted to regulate generally in an area that Congress

_____

[9] Although the Ninth Circuit applies *Salerno* to facial preemption challenges, it has indicated reservations in doing so. *See, e.g.*, *Puente Arizona v. Arpaio*, 821 F.3d 1098, 1104 (9th Cir. 2016) (recognizing that "*Salerno*'s applicability in preemption cases is not entirely clear" but nevertheless applying it "[w]ithout more direction" from the Supreme Court); *U.S. v. Arizona*, 641 F.3d 339, 345 n.3 (9th Cir. 2011) ("Although we use the *Salerno* standard in a preemption analysis, it is not entirely clear from relevant Supreme Court cases the extent to which the *Salerno* doctrine applies to a facial preemption challenge."), *aff'd in part, rev'd in part*, 567 U.S. 387 (2012); *see also Montana Medical Association v. Knudsen*, 119 F.4th 618, 631-32 (9th Cir. 2024) (McKeown, J., concurring) ("I write separately to address the standards for facial preemption. . . . In my view, we ought to make explicit what the [Supreme] Court has done implicitly: bid the *Salerno* standard goodbye."). Challengers urge the Court to follow the lead of other circuits and discontinue using *Salerno* to evaluate facial preemption challenges. *See, e.g.*, *Club Madonna Inc. v. City of Miami Beach*, 42 F.4th 1231 (11th Cir. 2022); *Lozano v. City of Hazleton*, 724 F.3d 297 (3d Cir. 2013); *Doe v. City of Alburquerque*, 667 F.3d 1111 (10th Cir. 2012). As explained below, however, the district court correctly applied the standard to find SB 399 was facially preempted.

intended to be 'a zone free from all regulations, whether state or federal.'" *Chamber of Com. of U.S. v. Lockyer,* 364 F.3d 1154, 1169 (9th Cir. 2004) (quoting *Bldg. & Constr. Trades Council of the Metro. Dist. v. Associated Builders & Contractors of Mass./R.I., Inc.*, 507 U.S. 218, 226 (1993)). Thus, the Court explained, "where a state statute is in direct conflict with the NLRA or one of its processes, [the court's] focus is on the act of regulation itself, not the effect of the state regulation in a specific factual situation. *Id.*

SB 399 is in direct conflict with the NLRA and its processes. As the district court explained, SB 399 "creeps into the realm of regulating noncoercive speech because it does not distinguish between [coercive and noncoercive speech]." ER-24-25. Noncoercive speech is expressly permitted by Section 8(c) of the NLRA, however, so the State cannot regulate it. *See Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 889 (9th Cir. 2018) ("[T]he NLRA prohibits government policies that frustrate 'uninhibited, robust, and wide-open debate in labor disputes' and also 'precludes regulation of [non-coercive] speech about unionization.'") (quoting *Brown*, 554 U.S. at 68); *see also id.* ("*Brown* stands for the straightforward proposition that [Section] 8(c) means what it says: the government may not 'regulate[]' non-coercive labor speech.").

Necessarily, then, there is "no set of circumstances . . . under which [SB 399] would be valid," *Salerno*, 481 U.S. at 745, at least as to employers covered by

the NLRA. *See Lockyer*, 422 F.3d at 993 ("The all-or-nothing stakes of NLRA preemption renders the inquiry under *Salerno* moot, because once preemption is called for, the categorical nature of this conclusion automatically commands that no set of circumstances exists under which the [statute] would be valid. We hold that our preemption analysis by definition slices through the *Salerno* standard, and any dispute as to whether plaintiffs' challenge to the statute is facial is moot and need not be decided.") (internal quotation and citation omitted).

Second, Defendants' argument that SB 399 has "numerous obvious applications that do not even implicate the NLRA," Defs.' Br. 32, is based on a misunderstanding of the NLRA and settled NLRB and judicial interpretations of it. Defendants suggest, for example, that SB 399 applies to an employer who "withholds pay from an employee who refused to attend a politician's campaign speech;" "denie[s] a promotion to an employee who refused to attend a meeting arguing why the employees should vote a certain way on a ballot proposition;" or "fire[s] an employee who refused to attend a prayer meeting." Defs.' Br. 32-33. Each of those scenarios, however, arguably implicates the NLRA.

To be sure, Section 7 of the NLRA guarantees employees the right to "form, join, or assist labor organizations," but also the right to engage in "other concerted activities for . . . mutual aid or protection." 29 U.S.C. § 157. This latter phrase has been "construed broadly to mean any concerted activities by employees that 'bear

45

a relationship to their interests as employees.'" *Raleys and Independent Drug Clerks Association Raleys*, 348 NLRB 382, 412 (2006) (quoting *Eastex, Inc. v. NLRB*, 437 U.S. 556, 567 (1978)); *Amcast Automotive of Indiana, Inc.*, 348 NLRB 836, 849 (2006) ("[A]n employee's activities come under the penumbra of Section 7 if they might reasonably be expected to affect terms or conditions of employment.").

Thus, the Supreme Court in *Eastex* opined that the mere characterization of conduct or speech, including as being "political," is not sufficient alone to remove it from the protection of the NLRA. 437 U.S. at 570 n.20 ("Petitioner argues that the 'right to work' and minimum wage issues are 'political,' and that advancing a union's political views is not protected by § 7. As almost every issue can be viewed by some as political, the clear purpose of the 'mutual aid or protection' clause would be frustrated if the mere characterization of conduct or speech removed it from the protection of the [NLRA].").

Consistent with *Eastex*, the Board has found a broad range of activity wholly unrelated to labor organizations to be protected, including "political" and "religious" activity. *See, e.g.*, *Siren Retail Corporation*, 373 NLRB No. 140, slip op. at 1 (2024) (employer violated NLRA by maintaining policy prohibiting employees from wearing pins or buttons "that advocate for a political, religious, or personal issue"); *Michigan State Employees Association*, 364 NLRB 837, 839

(2016) ("[P]rotected concerted activity encompasses 'political activity' when it relates to employees' terms and conditions of employment . . . ."); *Chipotle Services LLC*, 364 NLRB 980, 981 (2016), *abrogation recognized by*, *Motor City Pawn Brokers Inc.*, 369 NLRB No. 132 (2020) (employer unlawfully maintained rule entitled "Political/Religious Activity and Contributions" prohibiting employees from discussing politics and from using employer's name for political purposes),

The "obvious applications" of SB 399 that Defendants have conjured up, therefore, are not so obviously unconnected to the NLRA. More importantly, the district court did not err by failing to entertain them. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449-50 (2008) ("In determining whether a law is facially invalid, we must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases.").[10]

---

[10] Defendants' attempt to analogize this case to *Puente Arizona* misses the mark. Defs.' Br. 34. There, the Ninth Circuit concluded that Arizona's identity theft laws were not facially preempted by the federal Immigration Reform and Control Act because they had "obvious constitutional applications." *Puente Arizona*, 821 F.3d at 1104. Specifically, the state laws applied to "any person," which, the Court pointed out, included "unauthorized aliens, authorized aliens, and U.S. Citizens alike." *Id.* Thus, the Court explained, "one could not tell that the identity theft laws undermine federal immigration policy by looking at the text itself." *Id.* SB 399, on the other hand, applies only to "employers" and thereby plainly purports to regulate in the area of labor relations. In other words, unlike the

47

Defendants protract their "obvious applications" theory by arguing that the NLRA does not apply to government employers, certain small businesses, and certain categories of employees such as agricultural laborers and children and spouses of employers, while SB 399 does. Br. 33. Challengers do not dispute this general proposition. However, it fails to support the conclusion that SB 399 is not facially preempted because, as explained below, the statute cannot be severed under applicable California law.

## B.    SB 399 Cannot Be Severed Under California Law to Avoid Facial Preemption.

The Ninth Circuit has echoed the Supreme Court in holding that "[s]everability is . . . a matter of state law." *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1325 (9th Cir. 2015) (citing *Leavitt v. Jane L.*, 518 U.S. 137, 139 (1996) (per curiam)). California law does not support severability here.

Under California law, the presence of a severability clause "establishes a presumption" that "the invalid portions of a statute can be severed," but severance is not automatic. *Cal. Redevelopment Assn. v. Matosantos*, 267 P.3d 580, 607 (Cal.

---

state immigration laws at issue in *Puente Arizona*, it is clear from the text of SB 399 that federal labor policy is undermined, which is why the district court had no trouble determining that *Garmon* and *Machinists* preemption applies.

48

Sup. Ct. 2011).[11] California courts look to three other criteria in assessing the severability of a state law: the invalid provision must be grammatically, functionally, and volitionally separable. *Id.*[12] To the extent the offending provision is not separable on any of these three considerations, the entire law must be stricken and/or enjoined. *Id.* SB 399 is not grammatically, functionally, or volitionally separable in its most material respects.

First, SB 399's definitions of "employee" and "employer" are not grammatically separable under California law such that the statute could only apply to employees and employers covered by the NLRA. "[T]here is no possibility of mechanical severance . . . where the language is so broad as to cover subjects within and without the legislative power, and the defect cannot be cured

---

[11] SB 399 includes a severability clause. *See* Cal. Lab. Code § 1137(i) ("The provisions of this section are severable. If any provision of this section or its application is held invalid, that invalidity shall not affect other provisions or applications that can be given effect without the invalid provision or application.").

[12] Grammatical separability, also known as mechanical separability, depends on whether the invalid parts can be removed "as a whole without affecting the wording or coherence of what remains." *Id.* (internal quotations and citations omitted). Functional separability depends on whether the remainder of the statute is complete in itself. *Id.* Volitional separability depends on whether the remainder would have been adopted by the legislative body had the latter foreseen the partial invalidation of the statute. *Id.* Volitional separability is "the 'most important' factor in the severability analysis." *Acosta v. City of Costa Mesa*, 718 F.3d 800, 817 (9th Cir. 2013) (quoting *Katz v. Children's Hosp. of Orange Cnty.*, 28 F.3d 1520, 1531 (9th Cir. 1994)).

49

by excising any word or group of words . . . ." *Santa Barbara Sch. Dist. v. Superior Court*, 530 P.2d 605, 617 (Cal. Sup. Ct. 1975) (quoting *In re Blaney*, 184 P.2d 892, 900 (Cal. Sup. Ct. 1947)); *Birkenfeld v. City of Berkeley*, 550 P.2d 1001, 1033 (Cal. Sup. Ct. 1976) (rejecting severance argument where "[t]he constitutional defect cannot be cured simply by excision but only by additional provisions that are beyond our power to provide").

SB 399 broadly defines "employee" as "any individual who performs services for and under the control and direction of an employer for wages or other renumeration." Cal. Lab. Code § 1137(b)(1). "Employer," in turn, is broadly defined as "any individual, partnership, association, corporation, or any agent, representative, designee, or person or group of persons acting directly or indirectly on behalf of or in the interest of an employer with the employer's consent and shall include all branches of state government, or the several counties, cities and counties, and municipalities thereof, or any other political subdivision of the state, or a school district, or any special district, or any authority, commission, or board or any other agency or instrumentality thereof." *Id.* at § 1137(b)(2). The Court cannot simply excise language in these definitions to cover only employees and employers who are not subject to the NLRA.

Instead, the Court would have to rewrite the statute to recognize the exclusions, which it is not permitted to do. *See United States v. Manning*, 527 F.3d

828, 840 (9th Cir. 2008) (declining to "unscrambl[e] the egg" where excising preempted provisions from the state's act would require the court to rewrite most of the statute); *California Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1147 (9th Cir. 2001) (recognizing that federal courts are not "authorized to rewrite the law so it will pass constitutional muster") (citing *Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 397 (1988)).

Nor can the Court simply excise provisions of SB 399 to restrict it to applications not implicating the NLRA. As explained above, "politics" and "religion" are often intertwined with protected concerted activity under Section 7. Thus, removing "the decision to join or support any . . . labor organization" from the definition of "political matters" would not be enough. The Court would have to rewrite the law to clarify that "political and religious matters" do not refer to speech protected or prohibited by the NLRA.

Finally, even assuming *arguendo* that the Court could blue pencil SB 399 in such a way that it applies only to employees and employers not subject to the NLRA, and/or in such a way that it only applies to conduct beyond the scope of the NLRA, the remainder of the statute would not be complete in itself (*i.e.*, it is not functionally separable), and it would not have been adopted by the California Legislature in such limited form (*i.e.*, it is not volitionally separable). *See Santa Barbara*, 530 P.2d at 618 ("The final determination depends on whether the

51

remainder . . . is complete in itself and would have been adopted by the legislative body had the latter foreseen the partial invalidation of the statute . . .") (internal quotations and citations omitted).

Nothing in the record supports the conclusion that SB 399 would have been enacted solely to limit speech by government employers, agricultural employers, or other employers not subject to the NLRA, nor does the record support the conclusion that SB 399 would have been enacted solely to limit speech not regulated by the NLRA. On the contrary, the legislative history of SB 399, some of which is reflected in ER-101-160, is unequivocally clear that the primary purpose of the legislation was to outlaw anti-union captive audience meetings by private employers subject to the NLRA. *See* ER-107-08 (April 11, 2023 Senate Committee on Labor, Public Employment and Retirement analysis of SB 399) (discussing former-NLRB General Counsel's initiatives to find captive audience meetings at which employers discuss unionization unlawful under the NLRA and summarizing efforts by other states to similarly invalidate captive audience meetings); ER-120-24 (April 23, 2023 Senate Judiciary Committee analysis of SB 399) (extensive discussions concerning potential preemption of SB 399 by NLRA); ER-144 (July 11, 2023 Assembly Judiciary Committee analysis of SB 399) ("Captive audience meetings, which typically refer to a mandatory employer-hosted meeting during which the employer communicates their distaste for labor organizing or a specific

52

union, are fairly common across industries."); ER-158 (August 21, 2024 Assembly floor analysis of SB 399) (commenting that "[i]n the case of a workplace where employees are engaging in a unionization campaign, captive audience meetings can be particularly damaging").

In sum, the district court correctly concluded that SB 399 is facially preempted by the NLRA.

## **CONCLUSION**

For the foregoing reasons, the district court's order should be AFFIRMED.

/s/ Lonnie D. Giamela
Lonnie D. Giamela
Todd A. Lyon
Attorneys for Appellees
California Chamber of Commerce,
California Restaurant Association, and
Western Growers Association

53

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

**9th Cir. Case Number(s)**    **25-6874**

The undersigned attorney or self-represented party states the following:

[**X**] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** _/s/ Lonnie D. Giamela_    **Date** __January 16, 2026_____

54

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s)** _____**25-6874**_____

I am the attorney or self-represented party.

**This brief contains 9,641 words,** excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[**X**] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** _____*/s/ Lonnie D. Giamela*_____ **Date** January 16, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, which will accomplish service on all counsel of record.

/s/ *Lonnie D. Giamela*
Lonnie D. Giamela

56