No. 25-6874

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

CALIFORNIA CHAMBER OF COMMERCE, *et al*.,
*Plaintiffs-Appellees*,

v.

ROB BONTA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF CALIFORNIA, *et al*.,
*Defendants-Appellants*.

_____

**On Appeal from the United States District Court
for the Eastern District of California**
No. 2:24-cv-03798-DJC-SCR
The Honorable Daniel J. Calabretta

_____

**DEFENDANTS' REPLY BRIEF ON THE MERITS**

_____

ROB BONTA
  *Attorney General of California*
THOMAS S. PATTERSON
  *Senior Assistant Attorney General*
ANYA M. BINSACCA
  *Supervising Deputy Attorney General*
KRISTIN A. LISKA
  *Deputy Attorney General*
STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-3916
Fax: (415) 703-5480
Kristin.Liska@doj.ca.gov
*Attorneys for Defendants-Appellants*

February 6, 2026

# TABLE OF CONTENTS

**Page**

Introduction ...................................................................................................1

Argument .......................................................................................................2

I. Plaintiffs Have Not Established Standing .........................................2

II. Plaintiffs Have Not Established a Likelihood of Success ..............6

  A. First Amendment ...................................................................7

    1. SB 399 is a permissible prohibition on punishing employees who decline to listen to speech unrelated to their jobs ...............................................................7

    2. SB 399 is a permissible protection of a captive audience ........12

  B. NLRA Preemption ...............................................................16

    1. SB 399 is not facially preempted ...............................16

    2. Any preempted applications are severable ...............................20

Conclusion ...................................................................................................22

Certificate of Compliance ...........................................................................23

i

# TABLE OF AUTHORITIES

**Page**

CASES

*American Encore v. Fontes*
152 F.4th 1097 (9th Cir. 2025) .........................................................................2, 5

*Berger v. City of Seattle*
569 F.3d 1029 (9th Cir. 2009) ...............................................................................15

*California Redevelopment Ass'n v. Matosantos*
53 Cal. 4th 231 (2011) .............................................................................................21

*Chamber of Commerce of U.S. v. Lockyer*
364 F.3d 1154 (9th Cir. 2004) ........................................................................17, 18

*Chamber of Commerce of U.S. v. Lockyer*
408 F.3d 590 (9th Cir. 2005) .................................................................................18

*Chamber of Commerce of U.S. v. Lockyer*
435 F.3d 999 (9th Cir. 2005) ........................................................................17, 18

*Erznoznik v. City of Jacksonville*
422 U.S. 205 (1975)........................................................................................12, 14

*Geo Grp., Inc. v. Inslee*
151 F.4th 1107 (9th Cir. 2025) ...............................................................................3

*Honeyfund.com Inc. v. Governor*
94 F.4th 1272 (11th Cir. 2024) ....................................................................*passim*

*Peace Ranch, LLC v. Bonta*
93 F.4th 482 (9th Cir. 2024) ...........................................................................2, 3

*Planned Parenthood Great Nw., Hawaii, Alaska, Indiana, Kentucky v. Labrador*
122 F.4th 825 (9th Cir. 2024) ................................................................................3

*Project Veritas v. Schmidt*
125 F.4th 929 (9th Cir. 2025) .........................................................................7, 8

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Puente Arizona v. Arpaio*
   821 F.3d 1098 (9th Cir. 2016) ........................................................................17

*Rowan v. U.S. Post Office Dep't*
   397 U.S. 728 (1970)........................................................................................11

*Seattle Pacific Univ. v. Ferguson*
   104 F.4th 50 (9th Cir. 2024) ............................................................................3

*Snyder v. Phelps*
   562 U.S. 443 (2011)........................................................................................14

*Susan B. Anthony List v. Driehaus*
   573 U.S. 149 (2014)......................................................................................2, 3

*Thomas v. Anchorage Equal Rights Commission*
   220 F.3d 1134 (9th Cir. 2000) ......................................................................2, 3

*United States v. Salerno*
   481 U.S. 739 (1987)....................................................................................16, 17

*Vivid Ent., LLC v. Fielding*
   774 F.3d 566 (9th Cir. 2014) ..........................................................................20

*Washington State Grange v. Washington State Republican Party*
   552 U.S. 442 (2008)........................................................................................20

**CONSTITUTIONAL PROVISIONS**

United States Constitution
   First Amendment ...................................................................................*passim*

**STATUTES**

California Labor Code
   § 1102.5(d).......................................................................................................8
   § 1137(g)(1) ...................................................................................................18
   § 1137(i)..........................................................................................................21

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

OTHER AUTHORITIES

Gary Claxon et al., *Employer-Sponsored Health Insurance 101*,
https://www.kff.org/health-costs/health-policy-101-employer-
sponsored-health-insurance/?entry=table-of-contents-introduction...................14

iv

## INTRODUCTION

The California Legislature passed Senate Bill 399 (SB 399) to protect employees from being punished for declining to listen to speech from their employers on religious or political matters unrelated to their job duties.  SB 399 does not prohibit or compel any speech by employers, and its legislative history is clear that the Legislature did not intend to silence any speech.  All the law does is ensure employees may walk away from religious or political speech unrelated to their job duties without fearing retribution if they do not wish to listen.

Plaintiffs attempt to assert a pre-enforcement challenge of SB 399, but they lack standing to do so.  In any event, SB 399 does not violate the First Amendment.  In arguing to the contrary, plaintiffs effectively contend that they have a First Amendment right to threaten their employees with adverse employment actions to force employees to listen to speech unrelated to their job duties.  Not so.  The First Amendment may protect speech, but it does not provide a speaker the right to compel others to listen.  Nor is SB 399 facially preempted by the National Labor Relations Act, since it has numerous applications that do not relate to collective bargaining or otherwise implicate the NLRA.  The lower court thus erred in entering a preliminary injunction of the statute.

**ARGUMENT**

### I.   PLAINTIFFS HAVE NOT ESTABLISHED STANDING

Plaintiffs have not established that their members have standing to bring this suit. *See* Defendants' Opening Br. at 17-18. The Ninth Circuit applies a three-part test to determine whether a plaintiff has established standing for a pre-enforcement challenge. *See id.* at 14. Under this test, plaintiffs have failed to demonstrate their members' standing because they have not established their members wish to engage in a course of conduct within the scope of SB 399. *See id.* at 15-18. Plaintiffs raise several arguments to the contrary, but none are persuasive.

First, plaintiffs contend that the lower court properly applied the test for pre-enforcement standing from *Thomas v. Anchorage Equal Rights Commission*, 220 F.3d 1134 (9th Cir. 2000) (en banc), because "the Ninth Circuit continues to apply it." Answering Br. at 21. Not so. While this Court "has toggled between" the multifactor test from *Thomas* and the three-part test drawn from *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), it "adopt[ed]" the framework from *Driehaus* in *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 487 (9th Cir. 2024). *See also American Encore v. Fontes*, 152 F.4th 1097, 1114 n.8 (9th Cir. 2025) ("Prior to *Driehaus*, we articulated our own factors in evaluating a plaintiff's standing to bring a pre-enforcement challenge . . . . And although we have 'toggled between these tests,' we apply the *Driehaus* framework." (quoting *Peace Ranch*, 93 F.4th at

2

487)); *Planned Parenthood Great Nw., Hawaii, Alaska, Indiana, Kentucky v. Labrador*, 122 F.4th 825, 836 (9th Cir. 2024) ("Though our circuit 'has toggled between the *Thomas* and *Driehaus* formulations, we have 'adopt[ed] the Supreme Court's framework' in *Driehaus*." (quoting *Peace Ranch*, 93 F.4th at 487) (alteration in original)).

In response, plaintiffs cite to cases that pre-date the decision in *Peace Ranch*. *See* Answering Br. at 21-22. And while plaintiffs cite *Peace Ranch* in their brief (e.g., at 23), they never acknowledge the language in that decision that clearly "adopts" the *Driehaus* standard as the proper test to apply for pre-enforcement standing, *see* 93 F.4th at 487. Indeed, cases since *Peace Ranch* have recognized that the *Driehaus* three-part test is now the proper standard for determining pre-enforcement standing. *See, e.g.*, *Geo Grp., Inc. v. Inslee*, 151 F.4th 1107, 1115 (9th Cir. 2025) (applying *Driehaus* standard and citing *Peace Ranch*); *Seattle Pacific Univ. v. Ferguson*, 104 F.4th 50, 59 & n.3 (9th Cir. 2024) (same). This Court's case law is clear: the *Driehaus* standard is now the proper test for pre-enforcement standing. That is so even if elements of the *Thomas* test are incorporated into or reflected in the *Driehaus* test, as plaintiffs contend (at 20 n.1). The lower court did not apply that standard in determining standing.

Had the district court applied the three-part *Driehaus* test, it would be clear that plaintiffs have not established standing. Specifically, plaintiffs have not

3

established that they wish to engage in a course of conduct within the scope of SB 399.  Throughout their answering brief, plaintiffs are clear about what course of conduct their members wish to engage in: "speech and communications" with their employees.  Answering Br. at 18; *see also id.* at 23 (plaintiffs' members engage in "employer sponsored meetings, speech, or other communications" with employees); *id.* at 23-24 (plaintiffs' members "hold meetings to discuss with their respective employees subjects encompassed by SB 399"); *id.* at 25-26 (plaintiffs' members "have engaged in, and intend to continue engaging in, speech on 'political matters' as defined by SB 399"); *id.* at 27 (plaintiffs' members wish to "sponsor[] communications at meetings where proscribed content is discussed").

But SB 399 does not prohibit *any* "speech and communication" with employees.  The law only prohibits *punishing employees* who decline to listen to that speech or communication.  *See* Defendants' Opening Br. at 22-23.  Under SB 399, plaintiffs' members are free to continue engaging in whatever speech and communications with employees that they wish, including on religious or political matters.  They can hold meetings for employees to discuss whatever topic they wish, send emails to employees on whatever subject they wish, and hang fliers on whatever topic they wish.  All an employer cannot do under SB 399 is punish or threaten to punish an employee who declines to attend the meeting, receive the

4

email, or read the fliers. Plaintiffs nowhere allege or provide evidence establishing that their members wish to do that.

Instead of contending that their members want to do what SB 399 actually prohibits, plaintiffs argue that this Court "must accept the plaintiff's interpretation of the statute 'so long as it is an arguable interpretation.'" Answering Br. at 25 (quoting *American Encore*, 152 F.4th at 1116). But there is no "arguable interpretation" of SB 399 that reaches to prohibiting an employer's communications with an employee on any subject. Both the statutory text and the legislative history are clear: SB 399 does *not* prohibit *any* speech by an employer, but only prohibits punishing employees who decline to listen. *See* Defendants' Opening Br. at 21-23. Plaintiffs have not alleged or established that their members wish to compel employees to listen to religious or political speech unrelated to their job duties. *See id.* at 15-16.[1] Because plaintiffs have not done so, they have failed to establish standing to bring a pre-enforcement challenge to the law.

That conclusion is not altered by the fact that SB 399 prohibits both sanctioning an employee and threatening to sanction an employee. Contrary to plaintiffs' contention, this fact does not mean that SB 399 prohibits "sponsoring

---

[1] Contrary to plaintiffs' argument (at 28-29), defendants do not argue plaintiffs' members must allege that they are actually going to engage in conduct that violates SB 399. Rather, plaintiffs must establish that their members *wish to* engage in conduct that is proscribed by SB 399.

communications at meetings where proscribed content is discussed." Answering Br. at 27. Nothing in SB 399 prohibits an employer from communicating its opinions on political or religious matters to employees at a meeting. An employer is perfectly free to discuss its religious or political opinions at meetings—as long as employees do not face the threat of punishment if they leave the meeting or decline to listen to those opinions. And an employer can easily make clear to employees that meetings on religious or political matters unrelated to their job duties are not mandatory, and that employees are free to leave or not attend such a meeting. In any event, nothing in plaintiffs' allegations or evidence indicates that their members wish to threaten employees with discipline for leaving a meeting where the employer discusses its political or religious opinions unrelated to job duties. They have therefore failed to establish that their members wish to engage in conduct within the scope of SB 399, and thus that their members have standing for this pre-enforcement challenge.

## II.   PLAINTIFFS HAVE NOT ESTABLISHED A LIKELIHOOD OF SUCCESS

In addition to erring in concluding that plaintiffs have standing, the lower court also erred in concluding plaintiffs were likely to succeed on their First Amendment or facial preemption claims.

6

### A. First Amendment

SB 399 is constitutional under the First Amendment because it does not prohibit or require any speech, but rather only prohibits an employer from compelling employees to listen to speech unrelated to their jobs through the use or threat of employment-related sanctions. *See* Defendants' Opening Br. at 21-23. And plaintiffs err in contending that the First Amendment gives their members the right to leverage their economic power to force employees to listen to their religious and political speech. For while the First Amendment protects speech, it does not grant a speaker the right to force others to listen to that speech. *See id.* at 18-20. Because SB 399 solely prohibits punishing employees who decline to listen, it does not intrude on the First Amendment. *See id.* at 21-26. In the alternative, SB 399 is constitutional as a protection of a captive audience. *See id.* at 26-30.

### 1. SB 399 is a permissible prohibition on punishing employees who decline to listen to speech unrelated to their jobs

First, plaintiffs contend that SB 399 is subject to First Amendment scrutiny because it is a content-based law. *See* Answering Br. at 33. Just as the lower court did, plaintiffs conflate the first step in the First Amendment inquiry—whether the law triggers First Amendment scrutiny as a regulation of speech—with the second step—whether the law is content-based or content-neutral. *See, e.g.*, *Project*

7

*Veritas v. Schmidt*, 125 F.4th 929, 942, 946 (9th Cir. 2025) (en banc) ("threshold question is whether" challenged law "regulates speech protected by the First Amendment" and court "next consider[s] whether" challenged law "is content based or content neutral").  As defendants explained in their opening brief, SB 399 is not a regulation of speech, but rather a prohibition of certain conduct—adverse employment action against employees who decline to listen.  *See* Defendants' Opening Br. at 21-24.  After all employee discipline is regularly subject to state and federal regulation.[2]  Thus SB 399 prohibition does not implicate an employer's free speech rights and does not trigger scrutiny under the First Amendment.

Second, plaintiffs analogize the law at issue here to that in *Honeyfund.com Inc. v. Governor*, 94 F.4th 1272 (11th Cir. 2024).  But the law at issue in that case is clearly distinguishable from SB 399.  In *Honeyfund.com*, the court addressed the validity of a Florida statute that prohibited employers from "holding mandatory meetings for employees if those meetings endorse viewpoints the state finds offensive," but allowed "meetings on those same topics . . . if speakers endorse viewpoints the state agrees with, or at least does not object to."  *Id.* at 1275.  Florida admitted that the law was meant to "protect Floridians from this dangerous and offensive speech—whether they wish to hear it or not."  *Id.* at 1277-1278.  The

---

[2] *See* Defendants' Opening Br. at 22 n.6 (listing federal regulations); *see also, e.g.*, Cal. Labor Code § 1102.5(d) (prohibiting employer retaliation for employee whistleblowing activities).

Eleventh Circuit held that this law regulated speech, not conduct, because its purpose was suppressing a specific disfavored viewpoint. *Id.* at 1277-1278. "Under Florida's proposed standard," the court explained, "a government could ban riding on a parade float if it did not agree with the message on the banner" or "pulling chairs into a circle for book clubs discussing disfavored books." *Id.* at 1279. Such "favoritism violates the First Amendment." *Id.*

SB 399 is not about favoring or sanctioning particular messages. Its applicability does not turn on whether California disapproves of the employer's specific message: an employer is not subject to SB 399 because they encouraged employees to vote Democrat rather than Republican, evangelized for Christianity rather than atheism, sought to advocate for rather than against unions, or advanced positions against rather than in line with the State's views. Rather, SB 399 is about ensuring employees are not forced to serve as an unwilling audience on matters unrelated to their job, but core to one's identity (politics and religion), because of their economic dependence on their employer. *See* Defendants' Opening Br. at 4-5. Indeed, the Legislature was explicit that it had no intent to silence *any* employer speech in enacting SB 399. *See id.* at 22. Put differently, the ruling in *Honeyfund.com* turned on the fact that the State disagreed with the employer's proposed speech; by contrast, SB 399 ensures that employees remain free to disagree, and opt-out of, an employer's proposed speech on matters unrelated to

9

the job. Since SB 399 is not intended to suppress unwanted speech, the ruling in *Honeyfund.com* is inapposite here.[3]

Finally, plaintiffs and their amici argue that SB 399 is properly viewed as a regulation of speech because it "conditions an employer's ability to take an action (mandate employee attendance at a meeting) on what the employer says at the meeting." Br. of U.S. Chamber of Commerce et al. as *Amici Curiae* at 9. In essence, plaintiffs and their amici seem to analogize SB 399 to a statute that imposes a burden or denies a benefit to a person because of their speech. But SB 399 does no such thing. SB 399 does not prevent an employer from having access to a government benefit—such as adopting a child or receiving a business license—because of what they say to their employees. Nor does SB 399 impose a burden—such as a tax or other legal penalty—on an employer because of what they say to their employees. Under SB 399, an employer remains just as free to say whatever they wish to their employees without facing any additional repercussions from the government.

---

[3] Plaintiffs contend that SB 399's "central purpose . . . is to impermissibly regulate, limit, and control an employer's ability to speak and communicate with its employees." Plaintiffs' Answering Br. at 10. But plaintiffs point to nothing in the statutory text or legislative history that indicates the Legislature had such a purpose. On the contrary, both the statutory text and legislative history are clear that the Legislature did *not* intend to limit what an employer could *say* to their employees; the Legislature intended to limit what an employer could *do* to their employees. *See* Defendants' Opening Br. at 4-5, 21-23.

10

Nonetheless, *amici* characterize SB 399 as giving employers "a no-win choice: either stop talking about [politics and religion] at mandatory meetings, or talk about [politics and religion] only in optional meetings." Br. of U.S. Chamber of Commerce et al. as *Amici Curiae* at 7. This argument misses the mark. For one, it tacitly acknowledges that—as defendants have consistently stated—SB 399 does not prohibit employers from talking to their employees about any matter, including religious and political ones, so long as listening is optional. For another, plaintiffs and their *amici* ignore that the First Amendment does not provide an employer a right to talk to their employees *at a mandatory meeting specifically*. The First Amendment right of employers to express their ideas on religious and political matters does not extend to leveraging economic power over employees to compel the employees to listen to those ideas. "[N]o one has a right to press even 'good' ideas on an unwilling recipient." *Rowan v. U.S. Post Office Dep't*, 397 U.S. 728, 738 (1970).

Telling an employer that they cannot punish employees who decline to listen to their speech on political or religious matters unrelated to job duties does not put an employer to an unconstitutional dilemma. Rather, SB 399 is no different from any law that prohibits compelling someone else to listen to unwanted speech— such as a law that prohibited restricting a viewer's ability to leave a play partway through or a law that prohibited instructors of exercise classes from requiring

11

attendees stay to listen to lectures at the end of class. Like any speaker, under SB 399 an employer remains free to seek out a willing audience—including among its own employees—and rely on its persuasive capabilities to convince others to agree with its ideas. But the First Amendment does not confer a more extensive right to punish those who decline to listen.

### 2. SB 399 is a permissible protection of a captive audience

In the alternative, SB 399 is permissible as a protection of a captive audience. As defendants explained in their opening brief, the State may act to protect an unwilling listener when "the degree of captivity makes it impractical for the unwilling viewer or auditor to avoid exposure." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 209 (1975). An employee in the situation that SB 399 addresses is such a captive audience. *See* Defendants' Opening Br. at 28-30. The employee asked to risk discipline in the workplace—which could involve the loss of the employee's job, pay, or health benefits—to avoid being subjected to unwanted religious or political speech is just as much a captive audience as passengers on a bus, patients at a healthcare clinic, or students in school. *See id.* at 28. SB 399 is thus constitutional as a protection for a captive audience. Plaintiffs' and their *amici*'s arguments to the contrary are not persuasive.

First, plaintiffs and their *amici* contend that this Court should adopt the conclusion of the Eleventh Circuit in *Honeyfund.com*. Not so. For one, the

12

Eleventh Circuit rejected a captive audience argument in a terse footnote, without providing comprehensive or persuasive analysis on the issue. *See Honeyfund.com*, 94 F.4th at 1282 n.5. For another, the Eleventh Circuit's ruling in *Honeyfund.com*—including on the captive audience doctrine—cannot be disentangled from Florida's censorship motive in enacting the law challenged. As the Eleventh Circuit noted in rejecting Florida's captive audience argument, Florida acted "to ban speech that it dislikes." *Id.* This fact colored the Eleventh Circuit's ruling throughout. In contrast, the California Legislature had *no* intent to suppress speech and made clear that SB 399 does not prohibit *any* speech. *See* Defendants' Opening Br. at 4-5, 22. Nor does SB 399 single out one specific viewpoint—as the Florida law did—for special regulation; rather, SB 399 applies broadly to religious and political topics generally—covering core issues of personal identity—without regard for the specific viewpoint or message expressed on those topics. Its purpose is to protect unwilling listeners, not to silence speakers, and the ruling in *Honeyfund.com* is inapplicable here for that reason.

Second, plaintiffs contend that employees are not a captive audience because they lack the same privacy interests as other captive audiences. *See* Plaintiffs' Answering Br. at 37. But plaintiffs nowhere explain how an employee has any less of a privacy interest in their personal political and religious beliefs than a passenger on a bus does—a classic example of a captive audience, *see* Defendants'

13

Opening Br. at 7-8. Moreover, employees subjected to economic sanctions that could potentially include losing their job clearly face a "degree of captivity that makes it impractical for the unwilling viewer or auditor to avoid exposure." *Erznoznik*, 422 U.S. at 209. Employees are dependent on their jobs for their very economic survival—and, for many, for their health and physical well-being as well, since most Americans under age 65 receive health insurance through their employer.[4] Even the strongest religious believer or political advocate might balk at refusing to attend a meeting about their employer's religious or political beliefs if doing so might risk the loss of their job and their healthcare or other economic penalties.

In light of the degree of captivity employees in such a situation face, this case is clearly distinguishable from those where courts have declined to apply the captive audience doctrine. For instance, in *Snyder v. Phelps*, 562 U.S. 443, 460 (2011), the Supreme Court held that funeralgoers who "could see no more than the tops of the signs when driving to the funeral" and who experienced no disruption to "the funeral service itself" were not a captive audience. But the employee subjected to discipline or the threat thereof for refusing to attend a meeting is hardly akin to such minimally-impacted funeralgoers. And this Court has

---

[4] *See, e.g.*, Gary Claxon et al., *Employer-Sponsored Health Insurance 101*, https://www.kff.org/health-costs/health-policy-101-employer-sponsored-health-insurance/?entry=table-of-contents-introduction (last accessed Feb. 5, 2026).

14

recognized that "public park-goers, in general, are not a protectable captive audience." *Berger v. City of Seattle*, 569 F.3d 1029, 1054 (9th Cir. 2009).  After all, a passerby in a public park can simply move away from any speech they do not wish to listen to and will suffer no consequences for doing so. That is the same degree of freedom SB 399 seeks to secure for employees who, prior to the law, risked losing the ability to pay their bills or care for their family if they tried to do the same in the workplace.

Recognizing SB 399 as a valid protection of a captive audience also does not result in the kind of dramatic change in the doctrine that plaintiffs and their *amici* contend.  Defendants are not arguing that any and all laws that regulate the workplace are automatically constitutional as a protection of a captive audience. On the contrary, whether a statute is defensible under the captive audience doctrine will turn on the specific circumstances and facts presented by that particular statute.  And defendants are not arguing that employees in the workplace are categorically a captive audience under any and all circumstances.  Again, whether employees constitute a captive audience will turn on the specific factual situation that a particular statute confronts.  All that defendants argue is that an employee forced to listen to an employer's religious or political speech under penalty of discipline or even risk of their livelihood is a captive audience.  The purpose and effect of SB 399 is to address that coercive scenario.

15

Finally, plaintiffs and their *amici* contend that upholding SB 399 will be granting employees a "heckler's veto" to shut down any speech they do not like. But that is hardly the case. An employer under SB 399 is free to hold as many meetings with willing listeners as it wishes to on whatever subjects it wishes to. No employee has a right under SB 399 to shut down such a meeting. And if an employee were to attempt to disrupt or interrupt such a meeting, that employee could of course be subject to discipline for their actions. Nothing in SB 399 protects employees who disrupt or interrupt such meetings from discipline or adverse employment actions, and nothing in SB 399 gives an employee the power to silence their employer. Under SB 399, an employee has only the freedom to walk away. Ensuring an employee has that freedom does not violate the First Amendment.

### B. NLRA Preemption

#### 1. SB 399 is not facially preempted

Nor have plaintiffs demonstrated a likelihood of success on their National Labor Relations Act (NLRA) preemption challenge to SB 399. In their answering brief, plaintiffs do not dispute that they bring a facial preemption claim or that the standard from *United States v. Salerno*, 481 U.S. 739, 745 (1987), applies to that

16

claim. *See* Answering Br. at 42.[5] Under this standard, plaintiffs must show that *every* application of SB 399 is preempted by the NLRA. *See* Defendants' Opening Br. at 31-32. As defendants established in their opening brief, SB 399 has manifold applications that do not even implicate the NLRA, and it is thus not facially preempted. *See id.* at 42-34. Plaintiffs' arguments to the contrary are unpersuasive.

First, plaintiffs cite the decision in *Chamber of Commerce of the United States v. Lockyer*, 364 F.3d 1154 (9th Cir. 2004), *reh'g granted, opinion withdrawn*, 408 F.3d 590 (9th Cir. 2005), *and on reh'g*, 422 F.3d 973 (9th Cir. 2005), *reh'g en banc granted, opinion withdrawn*, 435 F.3d 999 (9th Cir. 2005), *and on reh'g en banc*, 463 F.3d 1076 (9th Cir. 2006), *rev'd sub nom Chamber of Commerce of U.S. v. Brown*, 554 U.S. 60 (2008). They contend that under the ruling in *Lockyer*, "the district court's unchallenged determination that SB 399 is subject to *Machinists* preemption squarely forecloses defendants' opposition to a facial challenge." Answering Br. at 43. But the decision in *Lockyer* is no longer valid precedent in this Court. As plaintiffs neglected to mention, the panel

---

[5] In a footnote, plaintiffs urge this Court "to discontinue using *Salerno* to evaluate facial preemption challenges." Answering Br. at 43 n.3. Such a substantive argument is not properly raised in a footnote. In any event, plaintiffs do not dispute that this Court's binding precedent makes clear that *Salerno* is the proper standard to apply to a facial preemption claim. *See* Defendants' Opening Br. at 31-32 (citing, *inter alia*, *Puente Arizona v. Arpaio*, 821 F.3d 1098, 1104 (9th Cir. 2016)).

17

decisions from *Lockyer* have been withdrawn and "shall not be cited as precedent by or to this court." *See Chamber of Commerce of U.S. v. Lockyer*, 408 F.3d 590 (9th Cir. 2005) (order granting panel rehearing and withdrawing first panel decision); *Chamber of Commerce of U.S. v. Lockyer*, 435 F.3d 999 (9th Cir. 2005) (order granting rehearing en banc and withdrawing second panel decision). The decisions in *Lockyer* thus have no bearing on this matter.

Second, plaintiffs appear to argue that every application of SB 399 will implicate the NLRA, including the examples of clearly non-preempted applications proffered by defendants in their opening brief. *See* Answering Br. at 45-46. This is so, plaintiffs argue, because the NLRA protects "a broad range of activity wholly unrelated to labor organizations." Answering Br. at 46. But as plaintiffs themselves state, the NLRA specifically protects "concerted activities by employees that 'bear a relationship to their interests as employees.'" Answering Br. at 45-46 (quoting *Raleys & Independent Drug Clerk Ass'n Raleys*, 348 NLRB 382, 412 (2006)). The examples defendants point to—such as an employer penalizing an employee who refuses to attend a prayer meeting or a meeting regarding how to vote on ballot propositions—do not involve concerted activities by employees related to their interests as employees. And, of course, the statute itself expressly permits employers to compel employees to attend meetings on any subject that pertains to their job duties. Cal. Labor Code § 1137(g)(1).

18

In any event, one can imagine a great many potential applications of SB 399 that have nothing to do with employees' collective interests as employees, but rather with an employee's personal, individual autonomy and beliefs. For instance, the employee who faces penalty for refusing to attend worship services held by an employer because of their belief in a different faith (or no faith) is acting to protect their personal, individual religious or spiritual beliefs (or lack thereof). The employee who faces penalty for refusing to attend employer-sponsored campaign events because of their different political values or opinions similarly acts to protect their individual beliefs. Even the employee who declines to receive communications about politics and religion simply because they do not wish to is acting in their own, individual interest, not engaging in collective action related to their interest as an employee. Indeed, it was precisely this individual autonomy around political and religious beliefs that SB 399 was intended to protect. *See* Defendants' Opening Br. at 4-5, 22. The examples cited here and in defendants' opening brief do not implicate the NLRA and therefore establish that not every application of SB 399 is preempted—which proves fatal for plaintiffs' facial challenge.

Finally, plaintiffs appear to take defendants to task for proffering "arguable hypothetical circumstances under which SB 399 does not implicate the NLRA," contending such examples "are irrelevant." Answering Br. at 19; *see also id.* at 47.

19

Putting aside that *any* application of SB 399 is hypothetical in the context of a pre-enforcement challenge, such possible applications are precisely the focus of analysis in a facial challenge, since "a facial challenge must fail where the statute has a 'plainly legitimate sweep.'" *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008) (citation omitted).[6] Considering possible applications is necessary to determine whether such a plainly legitimate sweep exists. And SB 399 clearly has such a legitimate sweep. *See* Defendants' Opening Br. at 32-34. It therefore is not facially preempted by the NLRA.

### 2. Any preempted applications are severable

Finally, contrary to plaintiffs' contention, any preempted applications of SB 399 are severable from the remainder of the statute. Federal courts apply California law when analyzing severability. *Vivid Ent., LLC v. Fielding*, 774 F.3d 566, 574 (9th Cir. 2014). California courts apply a three-part test to determine severability: the invalid part of the law "must be grammatically, functionally, and

---

[6] Plaintiffs cite to *Washington State Grange* as support for their argument that the lower court properly "fail[ed] to entertain" the examples of non-preempted applications that defendants have raised. *See* Answering Br. at 47. But the quote cited from *Washington State Grange* counsels a court against going too far in dreaming up *unconstitutional applications*, not in considering potentially *constitutional* ones. After all, the Supreme Court in that case was clear that courts "[e]xercis[e] judicial restraint in a facial challenge," and that such challenges "are disfavored for several reasons." *Washington State Grange*, 552 U.S. at 450. If anything, *Washington State Grange* counsels against a court quickly dismissing possible permissible applications when determining a law's facial validity.

volitionally separable." *California Redevelopment Ass'n v. Matosantos*, 53 Cal. 4th 231, 271 (2011) (citation omitted). "Grammatical separability, also known as mechanical separability, depends on whether the invalid parts 'can be removed as a whole without affecting the wording' or coherence of what remains." *Id.* (citation omitted). "Functional separability depends on whether 'the remainder of the statute is complete in itself.'" *Id.* (citation omitted). "Volitional separability depends on whether the remainder 'would have been adopted by the legislative body had the latter foreseen the partial invalidation of the statute.'" *Id.* (citation omitted). The presence of a severability clause "establishes a presumption in favor of severance. *Id.* at 270.

SB 399 contains a severability clause, establishing a presumption in favor of severance. *See* Cal. Labor Code § 1137(i). And any preempted portions of the statute are grammatically separable by tailoring the statutory definition of "religious matters" or "political matters," each of which include an enumerated list of topics, to remove the offending topic—for instance, by excising the words "or labor organization" in the definition of "political matters." The remaining part of the definition would be coherent and understandable. The requirement for operational separability is also met since the remaining definition of "political matters" or "religious matters" would remain enforceable and the rest of the statute would be unaffected by this change. Finally, the severability clause establishes the

21

Legislature would have chosen to enact the statute without any invalid portions had it foreseen the invalidity.

## CONCLUSION

For the foregoing reasons, this Court should reverse the decision below and vacate the preliminary injunction.

Dated:  February 6, 2026

Respectfully submitted,

*s/ Kristin Liska*

Rob Bonta
  *Attorney General of California*
Thomas S. Patterson
  *Senior Assistant Attorney General*
Anya M. Binsacca
  *Supervising Deputy Attorney General*
KRISTIN A. LISKA
  *Deputy Attorney General*

22

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 25-6874

I am the attorney or self-represented party.

**This brief contains** | 5,170 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - [ ] it is a joint brief submitted by separately represented parties.
  - [ ] a party or parties are filing a single brief in response to multiple briefs.
  - [ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated _____.

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Kristin Liska | **Date** | February 6, 2026

*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at *forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*