**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CALIFORNIA CHAMBER OF COMMERCE; CALIFORNIA RESTAURANT ASSOCIATION; WESTERN GROWERS ASSOCIATION,

*Plaintiffs - Appellees*,

v.

ROB BONTA, Attorney General of State of California; LILIA GARCIA-BROWER, Labor Commissioner; CALIFORNIA DEPARTMENT OF INDUSTRIAL RELATIONS - DIVISION OF LABOR STANDARDS ENFORCEMENT,

*Defendants - Appellants*.

No. 25-6874

D.C. No. 2:24-cv-03798-DJC-SCR

OPINION

Appeal from the United States District Court
for the Eastern District of California
Daniel J. Calabretta, District Court, Presiding

Argued and Submitted July 7, 2026
San Francisco, California

Filed October 29, 2026

Before: Richard A. Paez, Richard C. Tallman, and Mark J. Bennett, Circuit Judges.

Opinion by Judge Tallman

## SUMMARY*

**First Amendment / Preliminary Injunction**

The panel affirmed the district court's preliminary injunction preventing California from enforcing California Senate Bill (SB) 399, which prohibits an employer from subjecting, or threatening to subject, an employee to adverse action if the employee chooses not to attend an employer-sponsored meeting or receive communications from the employer, the purpose of which is to communicate the employer's opinion about religious or political matters.

Before SB 399 went into effect, three industry groups—the California Chamber of Commerce, the California Restaurant Association, and the Western Growers Association—sued the California Attorney General, the California Labor Commissioner, and the Division of Labor Standards of the California Department of Industrial Relations (collectively, "California") to enjoin enforcement. The industry groups contend that SB 399

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

violates their First Amendment right to free speech and is preempted by the National Labor Relations Act.

The panel first held that the Western Growers Association has established standing at this stage where (1) at least some of its members have held "all-hands" meetings to communicate their opinion on political matters and would continue to do so if SB 399 were not in effect; (2) such meetings arguably violate SB 399; and (3) there is a credible threat of enforcement, either by California or by affected employees. Because the panel concluded that the Western Growers Association has standing, it did not address the standing of the other industry groups.

Turning to the district court's decision to grant a preliminary injunction, the panel first rejected California's contention that SB 399 does not implicate the First Amendment. Because employers are forbidden from taking adverse action only if they communicate certain messages at the underlying meeting, the law inevitably singles out employers based on their expressive activity. Accordingly, the First Amendment applies.

The panel next held that strict scrutiny applied. SB 399 is facially content-based because it applies only when the employer has discussed certain topics: politics and religion. The law is also speaker-based because it is triggered only by speech communicating the employer's opinion about religious or political matters.

Applying strict scrutiny, the panel rejected California's assertion that SB 399 is constitutional as a protection of a "captive audience." The panel explained that both the Supreme Court and this court have referred to "captive audiences" only when the government acts as a proprietor or in the context of content-neutral time, place, and manner

restrictions. Neither court has relied on a "captive audience" theory to identify a compelling interest sufficient to uphold content-based restrictions on nongovernmental speech in a nongovernmental setting. Accordingly, the panel concluded that the industry groups are likely to succeed on the merits of their First Amendment claim.

Because the panel concluded that the industry groups are likely to succeed on the merits of their First Amendment claim, and California does not challenge the district court's determination that the remaining preliminary injunction factors are met, the district court did not abuse its discretion by granting the preliminary injunction.

The panel did not reach the industry groups' preemption claim.

---

## COUNSEL

Lonnie D. Giamela (argued), Fisher & Phillips LLP, Los Angeles, California; Todd A. Lyon, Fisher & Phillips LLP, Portland, Oregon; for Plaintiffs-Appellees.

Kristin A. Liska (argued), Deputy Attorney General; Anya Binsacca, Supervising Deputy Attorney General; Thomas S. Patterson, Senior Assistant Attorney General; Rob Bonta, California Attorney General; Office of the California Attorney General, San Francisco, California; for Defendants-Appellants.

Bryan M. Killian (argued) and Pranav Mulpur, Morgan Lewis & Bockius LLP, Washington, D.C.; Stephanie A. Maloney and Jordan L. Von Bokern, United States Chamber Litigation Center, Washington, D.C.; for Amici Curiae The

Chamber of Commerce of the United States of America, Associated Builders and Contractors, the National Retail Federation, the National Federation of Independent Business Small Business Legal Center, the Restaurant Law Center, the International Franchise Association, and the Coalition for a Democratic Workplace.

Alexander T. MacDonald, Littler Mendelson PC, Washington, D.C.; Joy C. Rosenquist, Littler Mendelson PC, Sacramento, California; for Amici Curiae California Employment Law Council, Institute for the American Worker, California Farm Bureau Federation, and California Trucking Association.

---

## OPINION

TALLMAN, Circuit Judge:

California Senate Bill (SB) 399 prohibits an employer from subjecting, or threatening to subject, an employee to adverse action if the employee chooses not to attend an employer-sponsored meeting or receive communications from the employer, "the purpose of which is to communicate the employer's opinion about religious or political matters." Cal. Lab. Code § 1137(c). Before the law went into effect, three industry groups—the California Chamber of Commerce, the California Restaurant Association, and the Western Growers Association—sued the California Attorney General, the California Labor Commissioner, and the Division of Labor Standards of the California Department of Industrial Relations (collectively, "California") to enjoin enforcement.

The industry groups claim that SB 399 violates their First Amendment right to free speech and is preempted by the National Labor Relations Act. The district court agreed on both points and preliminarily enjoined California from enforcing the law. Before us, California argues that the industry groups lack standing for this pre-enforcement challenge and that the district court was wrong about the groups' likelihood of success. We conclude that at least one industry group has sufficiently established standing at this stage and that the groups are likely to succeed on the merits of the First Amendment claim. We need not (and do not) address preemption.

We affirm the grant of injunctive relief.

**I**

In 2024, the California Legislature enacted SB 399, which became effective on January 1, 2025. The Legislature was concerned that employees were required, on pain of adverse employment action, to attend meetings at which employers shared their opinions on political or religious matters. The Legislature believed that employees may feel compelled to adopt their employers' views on these matters because they did not want to lose their jobs.

To this end, SB 399 provides that:

> [a]n employer, [with exceptions not relevant here], shall not subject, or threaten to subject, an employee to discharge, discrimination, retaliation, or any other adverse action because the employee declines to attend an employer-sponsored meeting or affirmatively declines to participate in, receive, or listen to any communications with

> the employer or its agents or representatives, the purpose of which is to communicate the employer's opinion about religious or political matters. An employee who is working at the time of the meeting and elects not to attend a meeting described in this subdivision shall continue to be paid while the meeting is held.

Cal. Lab. Code § 1137(c). "Political matters" are defined as "matters relating to elections for political office, political parties, legislation, regulation, and the decision to join or support any political party or political or labor organization." *Id.* § 1137(b)(3). "Religious matters" are defined as "matters relating to religious affiliation and practice and the decision to join or support any religious organization or association." *Id.* § 1137(b)(4).

SB 399 authorizes the California Labor Commissioner to investigate alleged violations, to order appropriate temporary relief, and to issue citations or file a civil action against an employer. *Id.* § 1137(e). Employers who violate the law face a civil penalty of $500 per employee per violation. *Id.* § 1137(d).

SB 399 also creates a private right of action which empowers employees to sue their employers for alleged violations. *Id.* § 1137(f)(1). In an employee suit, an employer may face injunctive relief and damages, including punitive damages, in addition to the civil penalty. *Id.* § 1137(d), (f)(1)–(2).

The industry groups are three nonprofit business associations representing over 13,000 employers in California. They sued California, arguing that SB 399 was

invalid for two independent reasons: it violated their members' First Amendment rights and was preempted by the National Labor Relations Act. They sought a declaration of invalidity and a permanent injunction against enforcement. They also moved for a preliminary injunction, with each group providing a declaration in support. As relevant here, the declaration submitted by Western Growers Association attested that "members are directly impacted by SB 399 because . . . members hold 'all hands' meetings to discuss the impacts of [legislation] and [legislative] reform" of concern to members, but "outside the job duties of the respective members' employees."

The district court granted the preliminary injunction. After concluding that the industry groups had standing, it held that the groups were likely to succeed on the merits of both their preemption and First Amendment claims. Because California conceded that the other preliminary injunction factors would be met if the industry groups were likely to succeed on the merits, the district court accordingly entered a preliminary injunction preventing California from enforcing the Act. California timely appealed.

## II

We review the grant of a preliminary injunction for abuse of discretion. *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012) (per curiam). The district court abuses its discretion if its decision is "based on an erroneous legal standard or a clearly erroneous finding of fact." *Id.* (citation modified). We review conclusions of law de novo and findings of fact for clear error. *Id.* We review questions of standing de novo. *See Libertarian Party of L.A. Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013).

## III

Before reviewing the merits of the district court's preliminary injunction decision, we must assure ourselves that the industry groups have standing. *LA All. for Hum. Rts. v. Cnty. of Los Angeles*, 14 F.4th 947, 956 (9th Cir. 2021). At the preliminary injunction stage, the groups must make a "clear showing" that they are "likely to establish each element of standing." *Am. Encore v. Fontes*, 152 F.4th 1097, 1110 (9th Cir. 2025) (quoting *Murthy v. Missouri*, 603 U.S. 43, 58 (2024)). To do so, they may rely on the allegations in their complaint and any evidence they submitted to support their motion for injunctive relief. *LA All.*, 14 F.4th at 956–57.

The industry groups are suing on behalf of their members, which include employers potentially affected by SB 399. To have associational standing to bring this suit, the groups must show, respectively, that: (1) their "members would have standing to sue on their own"; (2) "the interest [they] assert is germane to [their] purpose"; and (3) "neither the claim asserted nor the relief requested requires individualized proof." *NetChoice, LLC v. Bonta*, 152 F.4th 1002, 1013 (9th Cir. 2025) (citation modified). California contests only the first associational standing issue, and here we see no reason to address the others. The industry groups' members would have standing to sue if they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct . . . , and (3) that is likely to be redressed by a favorable judicial decision." *LA All.*, 14 F.4th at 956 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

To show an injury in this pre-enforcement context, the industry groups must show that: (1) their members intend to engage in conduct "arguably affected with a constitutional

interest"; (2) the conduct is "proscribed by a statute"; and (3) "there exists a credible threat of prosecution" under that statute. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (citation omitted). California argues that the industry groups lack pre-enforcement associational standing because they have not sufficiently shown that these last two elements are satisfied: namely, that the groups' members intend to engage in conduct proscribed by, and there is a credible threat of prosecution under, SB 399. If California is right, then the groups lack standing because their members, having suffered no injury, lack standing to sue on their own.

Two additional considerations guide our standing inquiry. First, "standing is distinct from the merits of a claim," and we are "careful to avoid adjudicating merits issues at the standing phase." *Am. Encore*, 152 F.4th at 1110 (citation modified). When, as here, the parties dispute whether a statute applies to intended conduct, "we accept the plaintiff's construction [of the statute for standing purposes] so long as it is arguable." *Id.* at 1110–11. Second, "First Amendment cases raise unique standing considerations that tilt dramatically toward a finding of standing . . . because a chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury." *Id.* at 1113 (citation modified). With these principles in mind, we turn to the parties' contentions.

**A**

We begin by applying the Supreme Court's multi-factor test from *Driehaus*. California rightly does not challenge the first *Driehaus* factor, which requires the industry groups to show that their members intend to engage in conduct arguably affected by a constitutional interest. *Driehaus*, 573

U.S. at 159; *Am. Encore*, at 1114 n.8. The industry groups' complaint alleges that their members "plan to conduct or engage in, employer sponsored meetings, speech, or other communications having the primary purpose of communicating the employer's opinion concerning political matters as defined" by SB 399. The declarations each industry group submitted to support the motion for injunctive relief state that their members held meetings to discuss these matters, but that such meetings are "directly impacted by SB 399." Engaging in political speech at employer-sponsored meetings is "certainly affected with a constitutional interest." *Driehaus*, 573 U.S. at 162 (citation modified); *accord Am. Encore*, 152 F.4th at 1116 (holding that engaging in political speech is "arguably affected by a constitutional interest"). Accordingly, the first *Driehaus* factor is satisfied.

**B**

The second *Driehaus* factor concerns whether the intended conduct is "arguably proscribed by the challenged statute." *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 487 (9th Cir. 2024) (citation modified) (quoting *Driehaus*, 573 U.S. at 162). For standing purposes, when the parties dispute whether a statute applies to intended conduct, "we accept the plaintiff's construction [of the statute] so long as it is arguable." *Am. Encore*, 152 F.4th at 1110–11.

California argues that this factor is not met because SB 399 does not prohibit engaging in political speech at employer-sponsored meetings. Rather, California reads the law to prohibit only punishing employees who decline to attend such meetings—something neither the complaint nor any declaration expressly asserts that the industry groups' members intend to do.

The industry groups' complaint alleges that their members "have conducted . . . and plan to conduct . . . employer sponsored meetings . . . having the primary purpose of communicating the employer's opinion concerning political matters as defined" by SB 399. In its declaration, the Western Growers Association explained that its members held "all-hands" meetings to discuss political matters.

There is an arguable construction of SB 399 that would proscribe holding such meetings. *See Am. Encore*, 152 F.4th at 1110–11. Under SB 399,

> [a]n employer . . . shall not subject, *or threaten to subject*, an employee to discharge, discrimination, retaliation, or any other adverse action because the employee declines to attend an employer-sponsored meeting . . . the purpose of which is to communicate the employer's opinion about . . . political matters [as defined by subsection (b)(3)].

Cal. Lab. Code § 1137(c) (emphasis added). The statute could plausibly be read to not just forbid punishing employees who decline to attend certain meetings but also prohibit threatening adverse action against employees who would decline to attend.

Merriam-Webster defines "all-hands" as "characterized by the participation or contributions of all individuals in a group." *All Hands*, Merriam-Webster.com Dictionary, https://perma.cc/TWJ2-N5MT (last visited July 23, 2026). So an employer's holding of an "all-hands" meeting implies that all employees are expected to attend. Further, if an

employer holds a meeting at which everyone is expected to be present, an employee could reasonably conclude that truancy will incur consequences. And on the industry groups' reading, which we find colorable, the law forbids threatening to subject an employee to adverse action for failing to attend certain meetings but does not require that the threat be explicit. An implicit threat suffices. Since designating a meeting as an "all-hands" meeting can convey an implicit threat that failure to attend will result in some adverse action, it follows that such conduct arguably triggers SB 399.

Our conclusion that SB 399 arguably reaches "all-hands" meetings is reinforced by the National Labor Relations Board's analysis in *Amazon.com Services LLC*, 373 NLRB No. 136, 2024 WL 4774441 (2024). There, the Board concluded that an employer-sponsored meeting is compulsory when "under all the circumstances, employees could reasonably conclude that attendance at the meeting is required as part of their job duties or could reasonably conclude that failure to attend or remain at the meeting could subject them to discharge, discipline, or any other adverse consequences." *Id.* at *29. The Board did not limit its conclusion to meetings designated as "mandatory." Rather, it concluded that *any* meeting could be deemed compulsory if an employer did not provide advance assurances that attendance was voluntary, no consequences would be imposed for failure to attend or for leaving, and no attendance records would be kept. *See id.*

At oral argument, California took a similar position, arguing that whether an "all-hands" meeting carries an implicit threat of consequences for failure to attend depends on how *the employees* understand "all-hands," based on their perception of the history and culture of the workplace. In

short, SB 399 could be understood to prohibit holding "all-hands" meetings if employees could reasonably conclude that they will face consequences for not attending. This construction has been advanced by the National Labor Relations Board and by California in the context of employer-sponsored meetings, so it is at least a colorable reading of SB 399's scope. With the balance tilted "dramatically toward a finding of standing," *Am. Encore*, 152 F.4th at 1113 (citation omitted), we conclude that the Western Growers Association has shown that its members intend to engage in conduct that is arguably proscribed by SB 399: namely, holding "all-hands" meetings to convey their opinions regarding political matters.

**C**

The third *Driehaus* factor concerns whether there is a credible threat of prosecution under SB 399. *Driehaus*, 573 U.S. at 159. Several factors may indicate a credible threat of prosecution, including: (1) "whether the enforcement authorities have communicated a specific warning or threat to initiate proceedings"; (2) "whether the enforcing authority has disavowed enforcement"; and (3) "whether there is a history of past prosecution or enforcement." *Am. Encore*, 152 F.4th at 1118 (citation modified). When, as here, the law is new and has a "negligible or nonexistent" history of enforcement, "either a general warning of enforcement or a failure to disavow enforcement is sufficient to establish a credible threat of prosecution." *Foothills Christian Ministries v. Johnson*, 148 F.4th 1040, 1050 (9th Cir. 2025) (citation modified).

While California has not communicated a specific warning or threat of enforcement, it also has not disavowed enforcement. Moreover, we must look to "the threat posed

*collectively* by the entire universe of potential complainants." *Am. Encore*, 152 F.4th at 1118 (quotation marks omitted) (quoting *Matsumoto v. Labrador*, 122 F.4th 787, 798 (9th Cir. 2024)). California does not have exclusive enforcement authority; it delegates enforcement authority to any employee who believes they have suffered a violation of the law. Cal. Lab. Code § 1137(f)(1). And considering California's position regarding all-hands meetings, employees could seek to enforce the law based solely on their belief that there was an implicit threat of adverse action for failure to attend certain meetings. The potential for any employee to expose an employer to liability for damages (including punitive damages) based on the employee's perception of the workplace's history and culture surrounding meetings "creates its own chilling effect" on the employer's ability to speak on political matters in the workplace. *Am. Encore*, 152 F.4th at 1119. Accordingly, we conclude that the industry groups have shown a credible risk of enforcement, at least regarding all-hands meetings.

* * *

In sum, we hold that the Western Growers Association has established standing at this stage. At least some of its members have held "all-hands" meetings to communicate their opinion on political matters and would continue to do so if SB 399 were not in effect. But such meetings arguably violate SB 399, and there is a credible threat of enforcement, either by California or by affected employees. Because we conclude that the Association has standing, we need not address the standing of the other industry groups. *See Mecinas v. Hobbs*, 30 F.4th 890, 897 (9th Cir. 2022) ("In a suit with multiple plaintiffs, generally only one plaintiff need have standing for the suit to proceed.").

## IV

We turn now to the district court's decision to grant a preliminary injunction. To warrant injunctive relief, the industry groups must show that: (1) "they are likely to succeed on the merits"; (2) "they are likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in their favor"; and (4) "an injunction is in the public interest." *LA All.*, 14 F.4th at 956 (citation modified). California focuses solely on the first factor; it does not challenge the district court's determination that the remaining factors are met.[1]

We conclude that the industry groups are likely to succeed on the merits of their First Amendment claim. From there, we conclude that the district court did not abuse its discretion by granting the preliminary injunction.

---

[1] Rightly so, at least as to the industry groups' First Amendment claim. "It is axiomatic that the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Hubbard v. City of San Diego*, 139 F.4th 843, 853 (9th Cir. 2025) (citation modified). And it is "relatively easy" to show irreparable harm because the industry groups "need only demonstrate the existence of a colorable First Amendment claim." *Id.* (quoting *Fellowship of Christian Athletes v. S.J. Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 694–95 (9th Cir. 2023) (en banc) (*overruled on other grounds by Arizona All. For Retired Americans v. Mayes*, 186 F.4th 622 (9th Cir. 2026)). When the party seeking injunctive relief "raise[s] serious First Amendment questions," we are "compel[led]" to find that "the balance of hardships tips sharply in their favor." *Id.* at 854 (citation modified). "And it is always in the public interest to prevent the violation of a party's constitutional rights." *Id.* (citation modified). Thus, if the industry groups have shown a likelihood of success on their First Amendment claim, it naturally follows that the remaining factors weigh in favor of injunctive relief. *Accord Nw. Ass'n of Indep. Schs. v. Labrador*, 166 F.4th 1148, 1169–70 (9th Cir. 2026).

**A**

California first argues that SB 399 does not implicate the First Amendment because it regulates conduct, not speech. California notes that the law's text neither prohibits nor requires any employer speech; it only prevents employers from forcing unwilling employees to listen to certain speech. Because only the *action* of "subject[ing], or threaten[ing] to subject," an employee to discipline violates the law, California contends that SB 399 is a conduct-based restriction, to which the First Amendment does not apply. Cal. Lab. Code § 1137(c).

We disagree. The First Amendment applies to a facially conduct-based statute when (1) "conduct with a significant expressive element drew the legal remedy," or (2) the law "has the inevitable effect of singling out those engaged in expressive activity." *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 685 (9th Cir. 2019) (citation modified); *accord Interpipe Cont'g., Inc. v. Becerra*, 898 F.3d 879, 895 (9th Cir. 2018) ("Conduct-based laws may implicate speech rights where . . . [,] even though the conduct standing alone does not express an idea, it bears a tight nexus to a protected First Amendment activity."). In evaluating this threshold question, we "may consider the inevitable effect of [the] statute on its face." *HomeAway.com*, 918 F.3d at 685 (citation modified).

It is true that SB 399 facially forbids only the act of "subject[ing], or threaten[ing] to subject, an employee" to discipline for declining to attend certain meetings. Cal. Lab. Code § 1137(c). But the law only applies to employers who engage in expressive activity at those meetings: namely, "communicat[ing their] opinion." *Id.* It does not, for example, prohibit taking adverse action against employees

who decline to attend a meeting, the sole purpose of which was for employees to fill out their annual tax paperwork. It prohibits adverse action only when the meeting's purpose was for the employer to engage in expressive activity. Thus, the First Amendment applies.

Our conclusion accords with the Eleventh Circuit's recent decision in *Honeyfund.com, Inc. v. Governor*, 94 F.4th 1272 (11th Cir. 2024). In *Honeyfund.com*, employers challenged Florida's Individual Freedom Act, which forbade subjecting "any individual, as a condition of employment," to "training, instruction, or any other required activity" endorsing certain ideas. *Id.* at 1275–76. As California does here, Florida defended the law as "a ban on conduct because only the meetings[2] are being restricted," not the underlying speech. *Id.* at 1277. Our sister circuit rejected Florida's conduct-not-speech defense because the only way to know if the law had been violated was to examine the message conveyed at the meeting. *See id.* at 1278. Because "the conduct regulated depend[ed] on—and [could not] be separated from—the ideas communicated," Florida's law was "functionally a regulation of speech" implicating the First Amendment. *Id.*

So too here. If an employer disciplines an employee for failing to attend an employer-sponsored meeting, the only way to know if SB 399 was violated is to "examine the content of the message that is conveyed" at the meeting. *Id.* (quoting *Otto v. City of Boca Raton*, 981 F.3d 854, 862 (11th Cir. 2020)). We must ask: did the employer express an

[2] Here, California argues that only the act of compelling employees to attend certain meetings is restricted. California contends that the employers are free to express their opinion on political or religious matters, provided they do not compel employees to listen.

opinion on political or religious matters? So "the disfavored 'conduct'"—subjecting absentee employees to disciplinary action—"cannot be identified apart from the disfavored speech"—the employer's opinion on political or religious matters. *Id.* Further, that California's law (unlike Florida's law) is *viewpoint*-neutral does not make it *content*-neutral. *See Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). Because employers are forbidden from taking adverse action *only if* they communicate certain messages at the underlying meeting, the law inevitably singles out employers based on their expressive activity.

California resists this conclusion, arguing that conduct-based regulations, such as employment discrimination and anti-retaliation laws, do not implicate the First Amendment even if they incidentally impact speech. But the example California cites highlights the difference between those conduct-based regulations and SB 399's speech-focused prohibition. The Supreme Court has said that Congress can outlaw racial discrimination in hiring, and "[t]he fact that this will require an employer to take down a sign reading 'White Applicants Only' hardly means that the law should be analyzed as one regulating the employer's speech rather than conduct." *Rumsfeld v. F. for Acad. and Inst'l Rts., Inc.*, 547 U.S. 47, 62 (2006)**)**. Hanging a sign announcing the employer's discriminatory policy is incidental to the employer's discriminatory practice; the discrimination occurs (and is forbidden) whether a sign is hung or not. In contrast, speech is integral to the conduct SB 399 forbids; the conduct is forbidden *only if* the employer engaged in certain speech. Thus, we reject California's argument that speech is incidental to SB 399's regulation of employer conduct.

Finally, California contends that the First Amendment does not apply because no one has a right to force others to listen to their speech. This argument rests on two quotes from the Supreme Court. The first is that "no one has a right to press even 'good' ideas on an unwilling recipient." *Rowan v. U.S. Post Office Dep't*, 397 U.S. 728, 738 (1970). The other is that "[w]hile the freedom to communicate is substantial, the right of every person to be let alone must be placed in the scales with the right of others to communicate." *Hill v. Colorado*, 530 U.S. 703, 718 (2000) (citation modified). But in context, neither quote proves the point California would like to make.

In both cases, the Supreme Court first recognized that the speaker had a First Amendment interest at stake. *See Rowan*, 397 U.S. at 737 (the speaker's "right to communicate [by mail] [was] circumscribed only by" the householder's traditional right "to bar, by order or notice, [speakers] from his property"); *Hill*, 530 U.S. at 714 (recognizing that the petitioners' "First Amendment interests . . . are clear and undisputed"). The issue before the Court in both *Rowan* and *Hill* was not whether the First Amendment applied; it was whether the challenged law was a constitutionally permissible limitation on the speaker's First Amendment right. Thus, we reject the argument that the First Amendment does not apply to this case. As in *Rowan* and *Hill*, it does; the relevant question is whether SB 399 is a constitutionally permissible limitation on the industry groups' free speech right.

**B**

The next step is to determine what level of scrutiny applies to SB 399. "Content-based laws . . . are presumptively unconstitutional and . . . therefore, are subject

to strict scrutiny." *Reed*, 576 U.S. at 163–64. A law is content-based if it "applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* at 163. SB 399 is facially content-based because it applies only when the employer has discussed certain topics: politics and religion. *See* Cal. Lab. Code § 1137(c); *accord F.C.C. v. League of Women Voters of Cal.*, 468 U.S. 364, 383 (1984) (a law is content-based if "enforcement authorities must necessarily examine the content of the message that is conveyed to determine whether" a violation has occurred).

In addition to being content-based, the law is also speaker-based. It is triggered only by speech "communicat[ing] *the employer's* opinion about religious or political matters." Cal. Lab. Code § 1137(c) (emphasis added). The Supreme Court is "deeply skeptical of laws that distinguish among different speakers, allowing speech by some but not others" because such laws "run the risk that the State has left unburdened those speakers whose messages are in accord with its own views." *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 777–78 (2018) (citation modified). That SB 399 burdens only one class of speakers, in addition to its facial content discrimination, is another reason to conclude that strict scrutiny applies.

**C**

Because strict scrutiny applies, SB 399 is "presumptively unconstitutional and may be justified only if [California] proves that [it is] narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163. California argues that SB 399 is constitutional as a protection of a "captive audience." We disagree.

In tension here are "the First Amendment rights of speakers" and "the privacy rights of those who may be

unwilling . . . auditors." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 208 (1975). The State may protect the unwilling auditor's privacy "by enacting reasonable time, place, and manner regulations applicable to all speech irrespective of content." *Id.* at 209. As discussed above, that is not what California did here: SB 399 singles out political and religious speech for regulation. *See* Cal. Lab. Code § 1137(c). Thus, California, "acting as censor, undert[ook] selectively to shield the public from some kinds of speech on the ground that they are more offensive than others." *Erznoznik*, 422 U.S. at 209. The Supreme Court has said that "[s]uch selective restrictions have been upheld only when the speaker intrudes on the privacy of the home, or the degree of captivity makes it impractical for the unwilling . . . auditor to avoid exposure." *Id.* (citation omitted). In such circumstances, California's ability to limit "discourse solely to protect others from hearing it is . . . dependent upon a showing that substantial privacy interests are being invaded in an essentially intolerable manner." *Id.* at 210 (omission in original) (quoting *Cohen v. California*, 403 U.S. 15, 21 (1971)).

California fails to identify a single case where a content-based restriction has been upheld because employees were deemed a captive audience or had their substantial privacy interests invaded in an essentially intolerable manner. Instead, the State points to cases upholding speech limitations on public transit, at healthcare facilities, and on school premises, which referred to commuters, patients, and students as captive audiences. *See, e.g.*, *Lehman v. City of Shaker Heights*, 418 U.S. 298 (1974) (public transit); *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753 (1994) (healthcare facilities); *DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.*, 196 F.3d 958 (9th Cir. 1999) (public

schools). California contends that employees are equally captive because they are economically dependent on their employer and risk losing their job, with its pay and benefits, should they refuse to listen to their employer's speech. Thus, California argues that employees need as much protection from unwanted speech at work as commuters on public transit, patients at healthcare facilities, and students at public schools.

California's argument goes too far. Both the Supreme Court and our Court have referred to "captive audiences" only when the government acts as a proprietor or in the context of content-neutral time, place, and manner restrictions. Neither court has relied on a "captive audience" theory to identify a compelling interest sufficient to uphold content-based restrictions on nongovernmental speech in a nongovernmental setting. Nor, as far as we can tell, have any of our sister circuits, with the Eleventh Circuit directly rejecting such a theory. *Honeyfund.com*, 94 F.4th at 1281 n.5. A brief review of the key cases on which California relies demonstrates the point.

The first is *Lehman*, in which the City of Shaker Heights sold advertising space on its public transit vehicles but refused to accept paid political advertising. 418 U.S. at 299–300. Lehman, a candidate for office, sued alleging violation of his First Amendment rights, arguing that the city had created a public forum from which it could not exclude political content. *Id.* at 299, 301. A four-Justice plurality disagreed, concluding that the city, operating "in a proprietary capacity," had decided to limit the kinds of advertisements displayed based on several prudential factors. *Id.* at 304. One of those factors was "the risk of imposing upon a captive audience"—commuters. *Id.* To the plurality, the commuters' "captivity" was merely a

prudential consideration in the city's decision to not allow certain advertising on its property.

In his solo concurrence in the judgment, Justice Douglas also described commuters as a "captive audience." *Id.* at 308. That was relevant to his analysis because he believed that the commuters' right "to be free from forced intrusion on their privacy preclude[d] the city from transforming its vehicles of public transportation into forums for the dissemination of ideas upon this captive audience." *Id.* at 307. To Justice Douglas, the commuters' "captivity" limited the city's ability to turn its transit vehicles into a First Amendment forum.

The Supreme Court has since characterized *Lehman* as recognizing the government's ability to "bar from its facilities certain speech that would disrupt the legitimate governmental purpose for which the property has been dedicated." *Consol. Edison Co. of New York, Inc. v. Pub. Serv. Comm'n*, 447 U.S. 530, 538 (1980). Our precedents consider an audience's "captivity" in the same manner as *Lehman*: as a prudential factor for a government, acting as proprietor, to consider when deciding what speech to allow in a nonpublic forum. *See, e.g.*, *Am. Freedom Def. Initiative v. King Cnty.*, 796 F.3d 1165, 1170 (9th Cir. 2015) (public transit passengers); *DiLoreto*, 196 F.3d at 967–68 (school students).

The Supreme Court has also considered an audience's degree of captivity when deciding if content-neutral time, place, and manner restrictions on speech in traditionally public forums are reasonable. The two examples California cites involved such restrictions imposed on public ways near healthcare facilities, in which patients are "held 'captive' by

medical circumstance." *Madsen*, 512 U.S. at 768; *see also Hill*, 530 U.S. at 718.

In short, these cases reveal that an audience's degree of "captivity" is relevant when the government, acting as a proprietor, excludes certain kinds of speech from nonpublic forums or when evaluating the reasonableness of content-neutral time, place, and manner restrictions imposed by the government acting as a regulator. No federal appellate court, including the Supreme Court, has relied on a "captive audience" theory to identify a compelling interest sufficient to support a content-based restriction on nongovernmental speech in a nongovernmental forum.

Considering the dearth of support for California's position and that the "captive audience" theory has been applied to support content-based speech restrictions only in nonpublic government forums, we conclude that the industry groups are likely to succeed on the merits of their First Amendment claim.

> The plain, if at times disquieting, truth is that in our pluralistic society, . . . we are inescapably captive audiences for many purposes. Much that we encounter offends our esthetic, if not our political and moral, sensibilities. Nevertheless, the Constitution does not permit government to decide which types of otherwise protected speech are sufficiently offensive to require protection for the unwilling listener or viewer.

*Erznoznik*, 422 U.S. at 210 (internal citation omitted).

## V

We hold that the Western Growers Association, at least, has standing to challenge SB 399. We further hold that the industry groups have shown a likelihood of success on the merits of their First Amendment claim, and the other factors support the district court's discretionary decision to grant a preliminary injunction. We do not reach the industry groups' preemption claim.

**AFFIRMED.**